**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Robert S. Friedman, Esq.
Ira M. Schulman, Esq.
Michael T. Driscoll, Esq.
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: rfriedman@sheppardmullin.com
ischulman@sheppardmullin.com
mdriscoll@sheppardmullin.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
LMREC III NOTE HOLDER, INC.,

                      Plaintiff,

                -against-

HUDSON EFT LLC, GUIDO SUBOTOVSKY,
SAMUEL GACCIONE, HUGO SUBOTOVSKY,
WILLIAM CLARKE, NOBLE ELEVATOR
COMPANY INC., SHAWN'S LAWNS INC., VSP
MECHANICAL INC., GEBERTH ELECTRIC INC.,
GAC BUILDERS LTD., BRIDGE MECHANICAL
CORPORATION, UPPER RESTORATION, INC.,
AND JOHN DOE #1 THROUGH JOHN DOE #10,

                      Defendants.
------------------------------------------------------------------ x

Case No. 7:20-cv-5063

**COMPLAINT**

Plaintiff LMREC III Note Holder, Inc. ("Plaintiff"), by its attorneys Sheppard, Mullin, Richter & Hampton, LLP, for its Complaint, alleges as follows:

    1.    This is a commercial mortgage foreclosure action involving real property located at and commonly referred to as 80 Main Street, Ossining, New York, located in the County of Westchester, identified as Section 97.7 Block 2 Lots 1 and 5 (the "Property").

1

**PARTIES**

2. Plaintiff is a Delaware corporation, having an address at 350 South Beverly Drive, Suite 300, Beverly Hills, CA 90212.

3. Upon information and belief, Defendant Hudson EFT LLC ("Borrower") is a limited liability company organized and existing under the laws of the State of New York, having an address at c/o Azimuth Development Group, 40 Fulton Street, Suite 2020, New York, New York 10038. The managing member of Borrower is Guido Subotovsky (20%). The members of Borrower are Samuel Gaccione (25%), Hugo Subotovsky (30%), and William Clarke (25%).

4. Upon information and belief Defendant Guido Subotovsky is an individual who is a citizen of the State of New York.

5. Upon information and belief Defendant Samuel Gaccione is an individual who is a citizen of the State of New York.

6. Upon information and belief Defendant Hugo Subotovsky is an individual who is a citizen of the State of New York.

7. Upon information and belief Defendant William Clarke is an individual who is a citizen of the State of New York.

8. Upon information and belief Defendant Noble Elevator Company Inc. is a New York corporation having an address at 1655 Sycamore Avenue, Bohemia, New York, 11716.

9. Upon information and belief Defendant Shawn's Lawns Inc. is a Connecticut corporation doing business in New York, having an address at 1200 High Ridge Road, Stamford, Connecticut, 06905.

10. Upon information and belief Defendant VSP Mechanical Inc. is a New York corporation having an address at 85 Holly Street, Staten Island, New York, 10304.

11. Upon information and belief Defendant Geberth Electric Inc. is a New York corporation, having an address at 15 Wayne Street, Croton-on-Hudson, New York, 10520.

12. Upon information and belief Defendant GAC Builders Ltd. is a New York corporation having an address at 28 Maple Place, Suite 284, Manhasset, New York, 11030.

13. Upon information and belief Defendant Bridge Mechanical Corporation is a New York corporation having an address at c/o Bonfiglio & Asterita, LLC, 900 South Avenue, Suite 101, Staten Island, New York, 10314.

14. Upon information and belief Defendant Upper Restoration, Inc. is a New York Corporation having an address at 72 Otis Street, West Babylon, New York, 11704.

15. Upon information and belief, defendants John Doe #1 through John Doe #10 are persons having or claiming an interest in or lien against the Property, and whose real names are presently unknown to Plaintiff.

## JURISDICTION AND VENUE

16. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

18. On or about September 19, 2017, Latitude Management Real Estate Capital III, Inc. ("Original Lender") and Borrower entered into a Permanent Loan Agreement ("Permanent Loan Agreement") and a Building Loan Agreement (the "Building Loan Agreement" and together with the Permanent Loan Agreement, herein collectively referred to as the "Loan

Agreement"). Annexed hereto as <u>Exhibits A and B</u> are true and correct copies of the Permanent Loan Agreement and the Building Loan Agreement, respectively.

19. On or about September 19, 2017, Borrower, as maker, executed a Consolidated Amended and Restated Mortgage Promissory Note dated September 19, 2017 (the "Permanent Loan Note") in favor of Original Lender, as holder, under which Borrower and Original Lender consolidated prior notes secured by prior existing mortgages in the aggregate outstanding principal amount of four million nine hundred five thousand dollars ($4,905,000). Annexed hereto as <u>Exhibit C</u> is a true and correct copy of the Permanent Loan Note.

20. Under the Permanent Loan Note, Borrower unconditionally promised to pay to Original Lender the principal sum of the Permanent Loan Note and interest on the unpaid principal sum of the Permanent Loan Note on or before the Maturity Date (as defined in the Permanent Loan Agreement).

21. The Permanent Loan Note was secured by, among other things, a Consolidated, Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Fixture Filing dated September 19, 2017 (the "Permanent Loan Security Instrument"), executed by Borrower in favor of Original Lender. Annexed hereto as <u>Exhibit D</u> is a true and correct copy of the Permanent Loan Security Instrument.

22. On or about September 19, 2017, Borrower, as maker, executed a Building Loan Mortgage Promissory Note dated September 19, 2017 (the "Building Loan Note" and together with the Permanent Loan Note, herein collectively referred to as the "Note") in favor of Original Lender, as holder, in the original principal amount of four hundred ninety-five thousand dollars ($495,000). Annexed hereto as <u>Exhibit E</u> is a true and correct copy of the Building Loan Note.

23.     Under the Building Loan Note, Borrower unconditionally promised to pay to Original Lender the principal sum of the Building Loan Note and interest on the unpaid principal sum of the Building Loan Note on or before the Maturity Date.

24.     The Building Loan Note was secured by, among other things, a Building Loan Mortgage, Security Agreement, Assignment of Leases and Fixture Filing dated as of September 19, 2017 (the "Building Loan Security Instrument" and together with the Permanent Loan Security Instrument, herein collectively referred to as the "Security Instrument"), executed by Borrower in favor of Original Lender.  Annexed hereto as Exhibit F is a true and correct copy of the Building Loan Security Instrument.

25.     The Loan Agreement, the Note, the Security Instrument and all other documents, agreements and instruments evidencing, guaranteeing, securing or otherwise pertaining to the Loan[1], and any amendments, modifications, consolidations, renewals, restatements or extensions thereof, are herein referred to collectively as the "Loan Documents."

26.     On or about September 19, 2017, all of Original Lender's right, title and interest in the Loan and each of the Loan Documents were transferred and assigned to Plaintiff, as successor in interest to the Original Lender.

27.     Plaintiff is the holder of the Loan and the Loan Documents.

28.     The Note provides that all of the terms, covenants and conditions contained in the Loan Agreement, the Security Instrument, and the other Loan Documents are made a part of the Note to the same extent and with the same force as if they were fully set forth in the Note.

---

[1] All initially-capitalized terms not otherwise defined herein shall have the meanings given such terms in the Loan Documents.

29. The Permanent Loan Agreement provides that Borrower's financing of any Insurance Premiums is an Event of Default pursuant to Section 7.1.1 of the Permanent Loan Agreement.

30. The Permanent Loan Agreement and Building Loan Agreement provide that failure of Borrower to timely and fully pay the Monthly Debt Service Payment and/or the escrow payments is an Event of Default under the terms of Section 8.1(a)(i) of the Permanent Loan Agreement and Building Loan Agreement.

31. The Permanent Loan Agreement provides that Borrower's abandonment of all or a portion of the Property is an Event of Default under the terms of Section 8.1(a)(xi) of the Permanent Loan Agreement.

32. The Building Loan Agreement provides that Borrower's abandonment of all or a portion of the Property is an Event of Default under the terms of Section 8.1(a)(viii) of the Building Loan Agreement.

33. The Permanent Loan Agreement provides that if the Property or any interest thereon is subjected to actual or threatened waste or to removal, demolition or material alteration so that the value of the Property is materially diminished thereby, it is an Event of Default under the terms of Section 8.1(a)(xiii) of the Permanent Loan Agreement.

34. The Building Loan Agreement provides that if the Property or any interest thereon is subjected to actual or threatened waste or to removal, demolition or material alteration so that the value of the Property is materially diminished thereby, it is an Event of Default under the terms of Section 8.1(a)(x) of the Building Loan Agreement.

35.     Upon the occurrence of an Event of Default, Plaintiff may accelerate the obligations of the Loan Agreement and the other Loan Documents, and Borrower will be required to immediately pay the outstanding principal, the Exit Fee, and any other amounts owing by Borrower under the Loan Documents.

36.     Pursuant to the Section 7.1(b) of the Security Instrument, upon the occurrence of an Event of Default, Plaintiff may commence foreclosure proceedings.

37.     Pursuant to the Section 7.1(d) of the Security Instrument, upon the occurrence of an Event of Default, Plaintiff may apply, as a matter of right, for the appointment of a receiver.

**The Mortgage, Security Agreement, Assignment of Leases and Fixture Filing**

38.     The Security Instrument granted Plaintiff a security interest in the Property, pursuant to which Borrower mortgaged, among other things, the Property to Plaintiff, which is described within Exhibit A to the Security Instrument, titled "Legal Description."

39.     The Permanent Loan Security Instrument and the Building Loan Security Instrument were recorded in the Office of the Westchester County Clerk on October 2, 2017, and bear Control Numbers 572683423 and 572683567, respectively.

40.     The Security Instrument provides that upon the occurrence of any Event of Default, Plaintiff may accelerate the Maturity Date and declare the entire unpaid debt to be immediately due and payable and institute proceedings for the complete foreclosure of the Security Instrument.

**Defaults and Notices of Default**

41.     Borrower has failed to timely and fully pay the Monthly Debt Service Payment Amount due on March 1, 2020 and failed to timely and fully pay the escrow payments due on March 1, 2020 into the Tax and Insurance Reserve Account and the Replacement Reserve Account.

42. Pursuant to Section 8.1(a)(i) of the Loan Agreement, Borrower's failure to timely and fully pay the Monthly Debt Service Payment Amount due on March 1, 2020 and failure to timely and fully pay the escrow payments due on March 1, 2020 into the Tax and Insurance Reserve Account and the Replacement Reserve Account each constitutes an Event of Default.

43. On April 3, 2020, Plaintiff gave notice to Borrower and individual guarantors Guido Subotovsky, Samuel Gaccione, Hugo Subotovsky and William Clarke (collectively, "Guarantors") that Plaintiff was accelerating the obligations under the Loan Agreement and other Loan Documents, and demanding that Borrower immediately pay Plaintiff the outstanding principal in the amount of five million four hundred thousand dollars ($5,400,000.00), and the Exit Fee in the amount of one hundred eight thousand dollars ($108,000.00) (the "Notice of Default"). The Notice of Default made written demand on Borrower for payment of five million five hundred eighty-eight thousand one hundred thirty-one and 41/100 dollars ($5,588,131.41) then due and payable under the Loan Agreement and other Loan Documents. This sum consisted of:

    a. the outstanding principal in the amount of five million four hundred thousand dollars ($5,400,000.00);

    b. the amount of twenty-nine thousand three hundred sixty-two and 50/100 dollars ($29,362.50) which represents the Monthly Debt Service Payment Amount due and payable on March 1, 2020;

    c. the amount of eleven thousand two hundred fifty-four and 02/100 dollars ($11,254.02) which represents the Tax and Insurance Reserve Account escrow payment due and payable on March 1, 2020;

    d.  the amount of five hundred twenty and 84/100 dollars ($520.84) which represents the Replacement Reserve Account escrow payment due and payable on March 1, 2020;

    e.  the Late Payment Charge in the amount of four thousand two hundred forty-four and 05/100 dollars ($4,244.05) for Borrower's failure to timely make the March 1, 2020 Monthly Debt Service Payment Amount and the March 1, 2020 escrow payments into the Tax and Insurance Reserve Account and the Replacement Reserve Account;

    f.  additional interest at the Default Interest Rate from March 1, 2020 through April 2, 2020, in the amount of twenty-four thousand seven hundred fifty and 00/100 dollars ($24,750.00);

    g.  the Exit Fee in the amount of one hundred eight thousand 00/100 dollars ($108,000.00); and

    h.  legal fees and costs incurred to date by Plaintiff by reason of Borrower's default in the amount of ten thousand and 00/100 dollars ($10,000.00).

44.    The Notice of Default also notified Borrower that interest at the Default Rate will accrue on such sum until paid in full.

45.    Further, Borrower has, in violation of the Loan Documents, caused or allowed several mechanics liens to encumber the property, neglected to adequately protect, maintain and preserve the Property, and financed its insurance premiums.

46.    On or about June 15, 2020, Plaintiff gave notice to Borrower and Guarantors of these additional Defaults and Events of Default, among other things.

### Waste

47. Pursuant the Loan Agreement, Plaintiff has the right to recover any and all liabilities, debts, damages, losses, costs, expenses, judgments, awards, claims, obligations, amounts paid in settlement, and any other expenses of any kind, including reasonable attorneys' fees and costs, which arise out of or in connection with any voluntary waste, or damage to the property resulting from the gross negligence or willful misconduct of Borrower, Principal, Guarantor, any Affiliate of any of them, or by any of Borrower's principals, officers, members or managers, or any agent or employee of any such Person, or removal or disposal of any portion of the Property in violation of the terms of the Loan Agreement and the other Loan Documents, which is not replaced with property of at least equal value.

48. In direct violation of several provisions of the Permanent Loan Agreement, including Sections 5.1.1 and 5.1.19, Borrower has committed voluntary waste of the Property by neglecting to adequately protect, maintain and preserve the Property and, as a direct result thereof, the Property has suffered (and continues to suffer from) significant material damage and deterioration. This damage includes, but is not limited to:

   a. damage resulting from water leaking from frozen pipes in several units along the west side of the building located on the Property (the "Building");

   b. windstorm damage to the roof the Building, resulting in water damage inside the Building caused by rain, and other damage that Plaintiff has not yet ascertained;

   c. damage resulting from the collapse of a retaining wall on the site adjacent to the Property suffered in 2018 which has yet to be remedied, resulting in (i) a perpetually unsafe condition at the Property and said adjacent site, (ii) the revocation by the Village of Ossining of the certificate of occupancy for the Property, and (iii) one or more lawsuits against Borrower and/or Guarantors.

49. The existence of these conditions, caused and/or exacerbated by Borrower's acts or omissions, constitute voluntary waste, as well as actual or constructive abandonment of the Property, and violate several provisions of the Loan Documents for which both Borrower and/or the Guarantors are liable.

## Indebtedness and Voluntary Lien

50. Upon information and belief, at least one mechanics lien has been filed against the Property.

51. Upon information and belief, defendant GAC Builders Ltd. has filed a mechanics lien against the Property.

52. Upon information and belief, GAC Builders Ltd. is owned, controlled or otherwise affiliated with Borrower, Principal and/or the other Guarantors, making GAC Builders Ltd.'s lien voluntary.

53. This is in direct violation of Section 5.2.2 of the Permanent Loan Agreement, as Borrower has failed to obtain Plaintiff's prior written consent to any Indebtedness or voluntary Lien encumbering the Property.

## Guaranty of Recourse Obligations

54. On or about September 19, 2017, as collateral security for the payment of the indebtedness evidenced by the Note, the Guarantors jointly executed and delivered to Original Lender a Guaranty of Recourse Obligations, dated September 19, 2017 (the "Recourse

Obligation Guaranty"). Annexed hereto as <u>Exhibit G</u> is a true and correct copy of the Recourse Obligation Guaranty.

55. Pursuant to the terms of the Recourse Obligation Guaranty, the Guarantors jointly and severally, irrevocably and unconditionally guaranteed to Plaintiff the payment and performance of all Guaranteed Obligations.

56. Pursuant to the Recourse Obligation Guaranty, the Guaranteed Obligations include all obligations and liabilities of Borrower for which Borrower is personally liable pursuant to Section 3.1 of the Loan Agreement.

57. Pursuant to the terms of the Recourse Obligation Guaranty, the Guarantors agreed to immediately, upon demand by Plaintiff, pay the amount due on the Guaranteed Obligations to Plaintiff.

58. Pursuant to the terms of the Recourse Obligation Guaranty, the Guarantors each submitted to the jurisdiction of the District Court for the Southern District of New York and have expressly waived any objections they may have on the basis of venue and/or *forum non conveniens*.

59. All conditions precedent to Plaintiff bringing this lawsuit have occurred, have been performed, or have been waived.

60. In order to protect its security during the pendency of this action, Plaintiff may be compelled to (a) pay taxes, assessments, sewer rates, water meter charges, insurance premiums and other charges affecting the Property, (b) repair, improve, remediate, and otherwise safeguard the Property, and (c) pay amounts which may be due for labor and materials furnished. Under the terms of the Security Instrument, any such expenditures or payments may be added to the

indebtedness, and Plaintiff will request that the amounts of such payments, with interest thereon, be adjudicated as part of the judgment of foreclosure and sale sought herein.

61. Upon information and belief, all Defendants have or claim to have some interest in or lien upon the Property or some part of the Property which interest or lien, if any, is subsequent and subordinate to the lien of the Security Instrument.

62. Plaintiff is the sole, true and lawful owner of the Note and Security Instrument.

63. No other actions have been brought to recover any part of the debt secured by the Security Instrument.

64. Plaintiff may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

65. Plaintiff specifically reserves the right to pursue a temporary injunction, appointment of receiver, or other relief with respect to its rights under the Loan Documents. Pursuant to N.Y. Real Prop. Acts. Law § 1371, Plaintiff will move the Court to enter final judgment against Borrower and/or Guarantors for any residue of the debt under the Loan Documents remaining unsatisfied after the foreclosure sale of the Property is completed.

## COUNT I

66. Plaintiff repeats and realleges all prior allegations.

67. One or more Events of Default have occurred and presently exist under the Loan Documents. The indebtedness has been accelerated and/or amounts due under the Loan Documents have been demanded and are due and owing. Accordingly, Plaintiff is entitled to proceed with a foreclosure of the Property.

## COUNT II

68. Plaintiff repeats and realleges all prior allegations.

69. Pursuant to the Loan Documents, Borrower should be adjudged liable to Plaintiff for any deficiency that may be due Plaintiff after (a) the Property has been sold as described herein and (b) the proceeds thereof to which Plaintiff is entitled have been paid to Plaintiff.

## COUNT III

70. Plaintiff repeats and realleges all prior allegations.

71. Borrower breached the Loan Documents by, among other things, committing voluntary waste to the Property, by failing to obtain Plaintiff's prior written consent to any indebtedness or voluntary liens encumbering the Property, and by financing Insurance Premiums.

72. Plaintiff has suffered damages resulting from Borrower's breach of the Loan Documents in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff for foreclosure of the Property as follows:

(a) adjudging the entire principal amount of $5,400,000, plus interest, late charges and attorneys' fees and expenses due to Plaintiff under the Loan Documents;

(b) adjudging any taxes, assessments, sewer rates, water meter charges, insurance premiums and other charges affecting the Property, including amounts which may be due for labor and materials furnished by Plaintiff during the pendency of this action to be deemed secured by the Security Interest and a valid lien on the Property.

(c) barring and forever foreclosing defendants and all persons claiming by, through or under them, subsequent to the commencement of this action of all estate, right, title, lien, claim

or equity of redemption in the Property or to any fixtures, fittings and appliances affixed thereto;

(d)    selling the Property and all fixtures, fittings and appliances affixed thereto; bringing the proceeds arising from the sale into Court; and paying to Plaintiff from such proceeds the principal amount due on the Loan Documents plus interest from the dates specified above to the date of payment, Plaintiff's attorneys' fees and expenses as specified in the Loan Documents, reimbursement for all expenses incurred in obtaining such insurance costs, expenses and disbursements of this action, the expense of sale together with any sums which may have been paid or which may be paid by Plaintiff for taxes, other insurance premiums, water charges, sewer rent and assessments and all sur-charges and advances to be paid on the Property, together with interest thereon from the dates of the respective payments and advances until the date of payment;

(e)    ordering that the referee conducting the sale shall be required by the judgment of the sale to specify the amount of any deficiency in the report of sale so that Plaintiff may make the appropriate application for a deficiency judgment pursuant to N.Y. Real Prop. Acts. Law § 1371 against Borrower and/or Guarantors;

(f)    adjudging any deficiency that is incurred upon the disposition of the Property referred to herein against Borrower and/or Guarantors;

(g)    entering judgment in the amount of the deficiency in Plaintiff's favor;

(h)    appointing a receiver of the Property during the pendency of this action to (i) receive and collect the earnings, revenues, rents, issues, profits and income from the Property and (ii) take the necessary measures to protect, improve, and remediate the Property in order to protect and safeguard the collateral for the Loan, with the usual powers and duties;

(i) adjudging the Guarantors liable, pursuant to the terms of the Recourse Obligation Guaranty, for any Guaranteed Obligations;

(j) awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 1, 2020

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/ Robert S. Friedman
Robert S. Friedman
Ira M. Schulman
Michael T. Driscoll

30 Rockefeller Plaza, Suite 2400
New York, New York  10112
Tel.: (212) 332-3800
Fax: (212) 332-3888
*Attorneys for Plaintiff*