**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

LMREC III NOTE HOLDER, INC.,       :

                                      :      No. 7:20-cv-05063 (KMK)

                   Plaintiff,        :      (PED)

                                        :

                                        :

                   -against-                :

                                        :

HUDSON EFT LLC, GUIDO SUBOTOVSKY,    :

SAMUEL GACCIONE, HUGO SUBOTOVSKY,    :

WILLIAM CLARKE, NOBLE ELEVATOR      :

COMPANY INC., SHAWN'S LAWNS INC., VSP    :

MECHANICAL INC., GEBERTH ELECTRIC INC.,   :

GAC BUILDERS LTD., BRIDGE MECHANICAL    :

CORPORATION, UPPER RESTORATION, INC.,    :

AND JOHN DOE #1 THROUGH JOHN DOE #10,   :

                                        :

                   Defendants.       :

---------------------------------------------------------------- x

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Robert S. Friedman, Esq.
Michael T. Driscoll, Esq.
Sophia L. Cahill, Esq.
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: rfriedman@sheppardmullin.com
        mdriscoll@sheppardmullin.com
        scahill@sheppardmullin.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND................................................................3

I.      Procedural History ........................................................................................................3

II.     The Loan and Its Related Documents ..........................................................................4

III.    The Monetary Default(s)..............................................................................................8

ARGUMENT ..........................................................................................................................10

I.      Motion for Summary Judgment as to Defendant Borrower.......................................10

        A.      Summary Judgment Standard ..........................................................................10

        B.      Plaintiff is Entitled to Judgment of Foreclosure as a Matter of Law ...................11

        C.      Relief on Summary Judgment Motion .............................................................144

II.     Default Judgment as to Non-Answering Defendants.......................................................211

CONCLUSION.........................................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ............................................................................................... 10, 11

*Bank of Am., N.A. v. 3301 Atlantic LLC*
No. 10-CV-5204, 2012 WL 2529196 (E.D.N.Y. June 29, 2012) ........................................... 22

*Bank of Am., Nat'l Assoc. v. Commack Prop., LLC*
No. 09-5296, 2010 WL 5139219 (E.D.N.Y. Dec. 10, 2010) ...................................................... 12

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*
302 F.3d 83 (2d Cir. 2002) ..................................................................................................... 11

*Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*
No. 12-CV-3366 (LGS), 2014 WL 1386609 (S.D.N.Y. Apr. 8, 2014) .................................. 11

*Cifarelli v. Vill. of Babylon*
93 F.3d 47 (2d Cir. 1996) ....................................................................................................... 11

*CIT Bank, N.A. v. Metcalfe*
No. 15-CIV-1829, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017) .......................................... 14

*CIT Bank NA v. Langley*
No. 1:17-cv-1548 (ADS) (AKT), 2019 WL 6050258 (E.D.N.Y. Nov. 15, 2019) ................. 21

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*
183 F.3d 151 (2d Cir. 1999) ................................................................................................... 14

*Dzugas-Smith v. Southold Union Free Sch. Dist.*
No. CV-08-1319 (SFJ)(WDW), 2012 WL 1655540 (E.D.N.Y. May 9, 2012) ...................... 11

*E. Sav. Bank, FSB v. Rabito*
No. 11-CV-2501, 2014 WL 4804872 (E.D.N.Y. Sept. 10, 2014) .......................................... 14

*Gustavia Home, LLC. v. Hoyer*
362 F. Supp. 3d 71 (E.D.N.Y. 2019) ..................................................................................... 14

*Gustavia Home, LLC v. White*
No. 16-CV-6926, 2017 WL 6403071 (E.D.N.Y. Apr. 28, 2017) .......................................... 21

*Isaacson v. Karpe*
445 N.Y.S.2d 37 (3d Dep't 1981) .......................................................................................... 15

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986)..................................................................................11

*Opals On Ice Lingerie v. Body Lines Inc.*
  320 F.3d 362 (2d Cir. 2003).....................................................................11

*Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*
  139 F. Supp. 2d 462 (S.D.N.Y. 2001).....................................................12

*Scott v. Harris*
  550 U.S. 372 (2007)..................................................................................11

*U.S. Bank, N.A. v. Squadron VCD, LLC*
  504 Fed.Appx. 30 (2d Cir. 2012).............................................................12

*U.S. Bank. Tr., N.A. v. Dingman*
  No. 16-CIV-1384, 2016 WL 6902480 (S.D.N.Y. Nov. 22, 2016) ...........14

*Warheit v. City of N.Y.*
  No. 02 Civ. 7345 (PAC), 2006 WL 2381871 (S.D.N.Y. Aug. 15, 2006)...............11

Statutes

Real Property Actions and Proceedings Law § 1311(3).................................21

Real Property Actions and Proceedings Law § 1321....................................14

Other Authorities

Fed. R. Civ. P. 53 ..........................................................................................14

Fed. R. Civ. P. 55 ..........................................................................................21

Fed. R. Civ. P. 56(a) ......................................................................................10

Fed. R. Civ. P. 56(c) ......................................................................................11

Fed. R. Civ. P. 56(e)(2)..................................................................................11

Local Rule 56.1 ...............................................................................................1

Plaintiff LMREC III Note Holder, Inc. ("Plaintiff"), submits this memorandum of law in support of its motion (the "Motion"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, requesting this Court to enter Plaintiff's Proposed Order of Judgment and Sale (1) granting Plaintiff's Motion for Summary Judgment in its entirety; (2) dismissing the Answer of Defendants Hudson EFT, LLC ("Borrower"), Guido Subotovsky ("G. Subotovsky") and Hugo Subotovsky ("H. Subotovsky"), including all affirmative defenses, with prejudice; (3) dismissing the Answer of Defendants Samuel Gaccione ("Gaccione") and William Clarke ("Clarke"), including all affirmative defenses, with prejudice; (4) granting judgment to Plaintiff in the amount of not less than $7,139,045.31 as unpaid principal balance, plus interest and default interest, and fees remained due and owing, as provided for in the underlying loan documents at issue in this case; (5) entering default judgment as to non-appearing Defendants VSP Mechanical, Inc. ("VSP"), Upper Restoration, Inc. ("Upper Restoration"), Noble Elevator Company, Inc. ("Noble"), Geberth Electric, Inc. ("Geberth"), GAC Builders Ltd. ("GAC"), Bridge Mechanical Corporation ("Bridge Mechanical"), and Shawn's Lawns, Inc. ("Shawn's Lawns"); (6) reserving Plaintiff's right to determine the amount of attorneys' fees and costs as permitted by the underlying loan documents following the conclusion of discovery relating to the deficiency judgment and as set forth in the Court's Order of July 26, 2021; and (7) granting such other and further relief as this Court deems just and proper. In support of the Motion, Plaintiff submits the Declaration of Lukas P. Mehring, dated September 1, 2021 ("Mehring Dec.") and the Declaration of Robert S. Friedman, dated September 1, 2021 ("Friedman Dec."), as well as the accompanying exhibits thereto, as well as the Statement Pursuant to Local Southern District of New York Rule 56.1. In further support of the Motion, Plaintiff respectfully states as follows.

<u>**PRELIMINARY STATEMENT**</u>

There is no dispute that Borrower has failed to meet its payment obligations and has defaulted under the loan agreements. Each principal of Borrower admits this and each offers no facts to defend against summary judgment and foreclosure.

Plaintiff is the first priority mortgagee of the real property located at 80 Main Street, Ossining, New York, in the County of Westchester, New York (the "Property"). Plaintiff is seeking to foreclose on the Property, which is security for a mortgage loan in the original principal amount of $4,950,000 and a building mortgage loan in the original principal amount of $495,000 (collectively, the "Loan"), as evidenced by the Note (as defined below), the Security Instrument (as defined below), and other Loan Documents (as defined below). As more fully detailed in the Amended Complaint annexed to the Friedman Dec. as **Exhibit 4** and as defined below, as well as the Mehring Dec., the Loan is in default based upon Borrower's failure to pay the Monthly Debt Service Payment (as defined in the Permanent Loan Agreement) and escrow payments when due each and every month since March 1, 2020. The defaults have not been cured, and Plaintiff is therefore entitled to immediate repayment of the Loan, plus principal, interest, attorneys' fees and costs[1] pursuant to the Loan Documents, as well as foreclosure of the Property.

Furthermore, and pursuant to this Court's July 26, 2021 order (the "July 26 Order"), the scope of this Motion is limited to the issue of the monetary defaults only. A copy of the July 26 Order is annexed to the Friedman Dec. as **Exhibit 7**. While not the subject matter of this current application, Plaintiff maintains that Borrower committed other non-monetary events of default (such as waste to the Property, lien encumbrances, etc.), which also served as the basis for

---

[1] As set forth below and in the Friedman Dec., consistent with the July 26 Order, and as set forth in the proposed order of Judgment of Foreclosure and Sale annexed to the Friedman Dec. as **Exhibit 8**, Plaintiff reserves its right to determine the amount of attorneys' fees and costs following the determination of this Motion. (Friedman Dec., ¶¶ 12-15).

commencing this foreclosure action in July 2020, which renders Defendants G. Subotovsky, H. Subotovsky, Gaccione, and Clarke liable under the Guaranty of Recourse Obligations. Consistent with the July 26 Order, this Motion accordingly seeks a judgment in the full amount of the Loan (exclusive of attorneys' fees and costs at this time) and a judgment to foreclose upon and sell the Property to pay off the Loan, arising out of events of monetary default as committed by Borrower. As is demonstrated below and together with the Mehring Dec., the Friedman Dec., and the exhibits annexed thereto, Plaintiff has established a *prima facie* entitlement to judgment of a foreclosure as a matter of law. Accordingly, Plaintiff's Motion must be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

Plaintiff commenced this foreclosure action by filing a complaint (the "Complaint") on July 1, 2020. (Friedman Dec., ¶ 4). A copy of the Complaint is annexed to the Friedman Dec. as **Exhibit 1**. As is required under New York law, Plaintiff filed the notice of pendency on July 6, 2020, and attached to the Friedman Dec. as **Exhibit 2**. (Friedman Dec., ¶ 5). Plaintiff subsequently obtained leave to amend the Complaint and thereafter filed an Amended Complaint on September 4, 2020 (the "Amended Complaint"). (Friedman Dec., ¶ 7). A copy of the Amended Complaint is annexed to the Friedman Dec. as **Exhibit 4**. Defendants Borrower, G. Subotovsky, and H. Subotovsky filed their Answer on November 30, 2020, a copy of which is annexed to the Friedman Dec. as **Exhibit 5**. (Friedman Dec., ¶ 8). Defendants Gaccione and Clarke filed their Answer on November 30, 2020, a copy of which is annexed to the Friedman Dec. as **Exhibit 6**. (Friedman Dec., ¶ 9). While Plaintiff maintains that it is entitled to relief due to events of monetary *and* non-monetary defaults as committed by Borrower, as previously discussed, the July 26 Order limits the scope of this Motion to events of monetary default only. (Friedman Dec., Exh. 7, pp. 1-2).

Additionally, several of the named defendants have not appeared in this action. As such, on August 18, 2021, Plaintiff filed declarations of default and proposed clerk's certificates of default as it relates to the following non-answering/non-appearing Defendants: VSP, Upper Restoration, Noble, Geberth, GAC, and Bridge Mechanical (*see, e.g.* Doc. Nos. 158 through 169). (Friedman Dec., ¶¶ 16-21, Exhs. 9-14). Copies of the foregoing declarations of default and proposed certificates of default are annexed to the Friedman Dec. as **Exhibits 9** through **14**, respectively. On August 19, 2021, the Clerk of Court entered Certificates of Default as and to non-answering Defendants VSP, Upper Restoration, Noble, Geberth, GAC, and Bridge Mechanical. (Friedman Dec., ¶¶ 22-27; Exhs. 15-20). Copies of the foregoing Certificates of Default are annexed to the Friedman Dec. as **Exhibit 15** through **20**, respectively. On August 23, 2021, Plaintiff filed a declaration of default and a proposed clerk's certificate of default with respect to Defendant Shawn's Lawns, a copy of which is annexed to the Friedman Dec. as **Exhibit 21**. (Friedman Dec., ¶ 28, Exh. 21). On August 26, 2021, the Clerk of Court entered a Certificate of Default with respect to Shawn's Lawns. (Friedman Dec., ¶ 28). A copy of the foregoing Certificate of Default as it relates to Shawn's Lawns Inc. is annexed to the Friedman Dec. as **Exhibit 22**. Accordingly, Plaintiff also seeks entry of a default judgment against each of VSP, Upper Restoration, Noble, Geberth, GAC, Bridge Mechanical, and Shawn's Lawns.

## II.     <u>The Loan and Its Related Documents</u>

On September 19, 2017, Latitude Management Real Estate Capital III, Inc. ("Original Lender") and Borrower entered into a Permanent Loan Agreement (the "Permanent Loan Agreement") and a Building Loan Agreement (the "Building Loan Agreement" and together with the Permanent Loan Agreement, collectively referred to as the "Loan Agreement"). (Mehring Dec., ¶ 4). Copies of the Permanent Loan Agreement and Building Loan Agreement are annexed to the Mehring Dec. as **Exhibits A** and **B**, respectively. On September 19, 2017, Borrower, as

maker, executed a Consolidated Amended and Restated Mortgage Promissory Note dated September 19, 2017 (the "Permanent Loan Note") in favor of Original Lender, under which Borrower and Original Lender consolidated prior notes secured by prior existing mortgages in the aggregate outstanding principal amount of four million nine hundred five thousand dollars ($4,905,000). (Mehring Dec., ¶ 5). A copy of the Permanent Loan Note is annexed to the Mehring Dec. as **Exhibit C**. The Permanent Loan Note amended, restated and consolidated Borrower's indebtedness on certain existing notes into a single consolidated note to finance the purchase of the property located at 80 Main Street, Ossining, New York (the "Property"). (Mehring Dec., ¶ 6). To secure the payment under the Permanent Loan Note, Borrower executed and delivered that certain Consolidated, Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Fixture Filing, dated September 19, 2017 (the "Permanent Loan Security Instrument"), which granted Original Lender a security interest on Borrower's right, title, and interest in the Property and personal property related thereto. (Mehring Dec., ¶ 8). A copy of the Permanent Loan Security Instrument is annexed to the Mehring Dec. as **Exhibit D**.

On September 19, 2017, Borrower, as maker, executed a Building Loan Mortgage Promissory Note dated September 19, 2017 (the "Building Loan Note" and together with the Permanent Loan Note, collectively referred to as the "Note") in favor of Original Lender, in the original principal amount of four hundred ninety-five thousand dollars ($495,000). (Mehring Dec., ¶ 9). A copy of the Building Loan Note is annexed to the Mehring Dec. as **Exhibit E**. As security for the Building Loan Note, Borrower executed and delivered that certain Building Loan Mortgage, Security Agreement, Assignment of Leases and Fixture Filing, dated as of September 19, 2017 (the "Building Loan Security Instrument" and together with the Permanent Loan Security Instrument, collectively referred to as the "Security Instrument"), which granted Original Lender

a security interest on Borrower's right, title, and interest in the Property and personal property related thereto. (Mehring Dec., ¶ 11). A copy of the Building Loan Security Instrument is annexed to the Mehring Dec. as **Exhibit F**. The Security Instrument was properly recorded on October 2, 2017 with the Clerk of Westchester County, New York. (Mehring Dec., ¶ 13, Exhs. D and F). Finally, the Loan Agreement, the Note, the Security Instrument and all other documents, agreements and instruments evidencing, guaranteeing, securing or otherwise pertaining to the loans, and any amendments, modifications, consolidations, renewals, restatement or extensions thereof, are referred to collectively as the "Loan Documents." (Mehring Dec., ¶ 14).

The Original Lender assigned the Loan Documents to Plaintiff as successor in interest by virtue of an assignment of the Permanent Loan Agreement (the "Permanent Loan Assignment Agreement"), dated on or about September 19, 2017 and an assignment of the Building Loan Agreement (the "Building Loan Assignment Agreement"), dated on or about September 19, 2017 (collectively referred to as the "Assignment"). (Mehring Dec., ¶ 15). The Assignment was properly recorded on October 2, 2017 with the Clerk of Westchester County, New York. (Mehring Dec., ¶ 16, Exhs. G and H). Copies of the Permanent Loan Assignment Agreement and the Building Loan Assignment Agreement are annexed to the Mehring Dec. as **Exhibits G** and **H**, respectively. Thus, Plaintiff is the present holder and owner of the Note and all Loan Documents. (Mehring Dec., ¶ 17).

Importantly, under the Note, Borrower unconditionally promised to pay to Original Lender on the First Payment Date and each subsequent Payment Date up to and including the Maturity Date, interest on the Outstanding Principal Balance at the Interest Rate in arrears. (Mehring Dec., ¶¶ 7, 10, Exh. A, p. 29). Section 2.3.2 of the Loan Agreement also indicates that "each payment of interest and principal (if any) as set forth in this Section 2.3.2 due and payable on each Payment

Date is referred to as the "Monthly Debt Service Payment Amount." (Mehring Dec., ¶ 19, Exh. A, p. 29). G. Subotovsky, the Managing Member of Borrower, acknowledged that after the execution of the Loan Documents, Borrower agreed to pay to Plaintiff the principal and interest amounts as it related to both the Permanent Loan and Building Loan on a monthly basis. (Friedman Dec., Exh. 24, 39:12-24).

Pursuant to Section 8.1(a)(i) of the Loan Agreement, Borrower's failure to timely and fully pay the Monthly Debt Service Payment[2] and the escrow payments each constitutes an Event of Default. (Mehring Dec., ¶ 20). Upon the occurrence of an Event of Default, such as the failure by Borrower to pay a sum of money to Plaintiff, Section 7.1(a) of the Security Instrument provides that Plaintiff may:

> accelerate the Maturity Date and declare the entire unpaid Debt to be immediately due and payable without any presentment, demand, protest, notice or action of any kind whatsoever (each of which is hereby expressly waived by Borrower), whereupon the same shall become immediately due and payable. Upon any such acceleration, payment of such accelerated amount shall constitute a prepayment of the Outstanding Principal Balance and any applicable Yield Maintenance, Exit Fee or other prepayment fees and charges provided for in the Loan Agreement shall then be immediately due and payable.

(*See* Mehring Dec., ¶ 21; *see also* Mehring Dec., Exh. D).

Additionally, and upon the occurrence of an Event of Default such as the monetary defaults at issue here, Section 7.1(b) of the Security Instrument provides that Plaintiff may:

> institute proceedings, judicial or otherwise, for the complete foreclosure, in accordance with New York law, of this Security Instrument under any applicable provision of law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions an in any order or manner.

---

[2] All initially-capitalized terms not otherwise defined in this memorandum shall have the meaning set forth in the Permanent Loan Agreement.

(*See* Mehring Dec., ¶ 22; *see also* Mehring Dec., Exh. D).

Upon information and belief, the Property is currently vacant. On August 21, 2020, the Court granted Plaintiff's application and appointed Andrew L. Herz, Esq. as the court-appointed receiver in this action (the "Receiver"). (Friedman Dec., ¶ 6).

## III. The Monetary Default(s)

Borrower is presently in default under the terms of the Loan Agreement by, *inter alia*, failing to make timely payments since at least March 1, 2020. (Mehring Dec., ¶ 24). Borrower failed to timely and fully pay the Monthly Debt Service Payment amount due on March 1, 2020 and failed to timely and fully pay the escrow payments due on March 1, 2020 into the Tax and Insurance Reserve Account and the Replacement Reserve Account. (Mehring Dec., ¶ 25). Since such time, Borrower has failed to cure such non-payment, and has not made any payments to Plaintiff since February 2020. (Friedman Dec., Exh. 24, 60:17-23; 62:14-21).

Borrower and certain of the individually named Defendants acknowledged and admitted that Borrower failed to make the March 1, 2020 payment and every payment thereafter. (Mehring Dec., ¶¶ 34-36; Friedman Dec., ¶¶ 32-36; *see also* Friedman Dec., Exhs. 23-26). For example, during his deposition, Defendant G. Subotovsky (the Managing Member of the Borrower), testified that Borrower did not make the March or April 2020 payments to Plaintiff, resulting in a notice of default by Plaintiff to Borrower. (Friedman Dec., ¶ 33). Through his testimony, G. Subotovsky expressly acknowledged that Borrower failed to make the March 2020 payment to Plaintiff:

> Q: After the payment made in February 2020, did there come a time
> when Hudson did not make a payment to plaintiff?
> A: Yes.
> Q: When did Hudson fail to make a payment to Plaintiff?
> A: Approximately March of 2020.

(Friedman Dec., Exh. 24, 60:17-23).

Further, G. Subotovsky acknowledged that Borrower failed to make any payments to Plaintiff after February 2020:

> Q: And so since February of 2020, has Hudson made any payments
> to plaintiff?
> A: Not to my knowledge.

(Friedman Dec., Exh. 24, 62:19-21).

Additionally, both H. Subotovsky and Gaccione (each a member of the Borrower) acknowledged that Borrower failed to make payments to Plaintiff. (Friedman Dec., ¶ 33-34). For example, H. Subotovsky testified that Borrower stopped making payments to Plaintiff at some point in time:

> Q: And what did you learn, if you remember, regarding the fact that
> borrower had stopped and/or missed, stopped making and/or missed
> a payment to plaintiff?
> A: Other than the payments have been stopped, nothing else, nothing
> more in detail.
> Q: Only that you did come to learn during this call that borrower had
> stopped making payment to plaintiff; is that correct?
> A: Yes.

(Friedman Dec., Exh. 23, 29:13-19, 23-25; 30:2-3).

Furthermore, Gaccione, also a member of the Borrower, testified that there eventually came a time that Borrower stopped making payments to Plaintiff. (Friedman Dec., Exh. 25, 22:4-9; 26:6-11). Finally, while Clarke indicated that despite being a member of Borrower, he was not involved with Borrower's financial obligations, he acknowledged that Gaccione at some point in time advised him that Borrower had failed to pay a sum of money to Plaintiff. (Friedman Dec., Exh. 26, 18:16-23).

Given the monetary defaults by Borrower, by way of letter correspondence dated April 3, 2020 (the "Notice of Default"), sent via Federal Express, Plaintiff informed Borrower, as well as G. Subotovsky, H. Subotovsky, Gaccione, and Clarke, that one or more Events of Default had

occurred, and accelerated Borrower's obligations under the Loan Documents, thereby demanding immediate and full payment of the outstanding principal, interest, and other monetary obligations. (Mehring Dec., ¶ 53). A copy of the Notice of Default is annexed to the Mehring Dec. as **Exhibit K**. Despite the Notice of Default and non-payment by Borrower, Borrower has failed to make payments to Plaintiff since March 2020. As a result, and given the various monetary *and* non-monetary events of default[3], the relevant provisions of the Loan Documents, and Borrower's failure to cure the non-payments, Plaintiff commenced this underlying proceeding in July 2020 to foreclose upon the Property and accelerate the Loan, consistent with the remedies available to it pursuant to the terms of the Loan Documents.

## ARGUMENT

### I.     Motion for Summary Judgment as to Defendant Borrower

#### A.     Summary Judgment Standard

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[S]ome alleged factual dispute" is not enough; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Facts are "material" where their resolution might affect the outcome of the suit under the governing law." *Id.* Once the moving party demonstrates there are no issues of fact that could affect the outcome, the burden shifts to the non-moving party to show specific, admissible evidence of a

---

[3] Pursuant to Paragraph 4 of the July 26 Order, Plaintiff is permitted to proceed with a motion for summary judgment seeking foreclosure on the issue of monetary events of default as committed by Borrower. It remains Plaintiff's position, however, that Borrower has committed both monetary events of default (i.e., non-payment) and non-monetary events of default (i.e., waste to the Property, lien encumbrances, etc.), as more fully set forth in the Complaint (Friedman Dec., Ex. 1) and Amended Complaint (Friedman Dec., Ex. 4). However, given the Court's Order of July 26, 2021, discovery and motion practice relating to non-monetary events of default (such as waste to the Property, lien encumbrances, etc.) as well as any deficiency judgment, is currently stayed pending determination of this Motion.

genuine, material dispute.  *See* Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248-49.  The

Court need not view all facts in the light most favorable to the non-moving party.  *See Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  If the record "contradicts" the nonmoving party's showing –

"so that no reasonable jury could believe it" – the Court need not adopt that position.  *Id.*

Thus, to defeat summary judgment here, Borrower must come forward with admissible,

affirmative proof.  *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir.

2002).  They must go beyond the pleadings, *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986), and "set forth *specific facts*" demonstrating there is "a *genuine* issue

for trial."  *See* Fed. R. Civ. P. 56(e)(2) (emphasis added); *see also Dzugas-Smith v. Southold Union*

*Free Sch. Dist.*, No. CV-08-1319 (SFJ)(WDW), 2012 WL 1655540, at *15 (E.D.N.Y. May 9,

2012) (quoting *Celotex Corp.*, 477 U.S. 317, 324 (1986)).  The facts the opponent proffers "must

be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant,

gossamer inferences, conjectural, speculative, nor merely suspicious."  *Opals On Ice Lingerie v.*

*Body Lines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) (quoting *Contemporary Mission, Inc. v. U.S.*

*Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)) (internal citations and quotation marks

omitted); *accord Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *Warheit v. City of*

*N.Y.*, No. 02 Civ. 7345 (PAC), 2006 WL 2381871, at *12 n.4 (S.D.N.Y. Aug. 15, 2006).  As is the

case here, Borrower will be unable to demonstrate the existence of a genuine issue for trial and

accordingly, summary judgment must be granted.

### B.     Plaintiff is Entitled to Judgment of Foreclosure as a Matter of Law

It is well-settled in New York that in moving for summary judgment in an action to

foreclose a mortgage, a plaintiff establishes its case as a matter of law through the production of

the mortgage, the unpaid note, and evidence of default.  *See Capital One Nat'l Ass'n v. 48-52*

*Franklin, LLC*, No. 12-CV-3366 (LGS), 2014 WL 1386609, at *4 (S.D.N.Y. Apr. 8, 2014)

(citations omitted) (granting summary judgment in foreclosure action); *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001) (citations omitted) (same).  Summary judgment in a mortgage foreclosure case is thus appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note.  *See, e.g.*, *Bank of Am., Nat'l Assoc. v. Commack Prop.*, *LLC*, No. 09-5296, 2010 WL 5139219, at *4 (E.D.N.Y. Dec. 10, 2010) (citations omitted).  "Once the plaintiff has established its *prima facie* case by presenting the [n]ote, [m]ortgage and proof of default, the [m]ortgagee has a presumptive right to foreclose."  *Regency Sav. Bank, F.S.B.*, 139 F. Supp. 2d at 465-66.  "The lender is entitled to summary judgment if it establishes by documentary evidence the facts underlying its cause of action and the absence of a triable fact." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 Fed.Appx. 30, 32 (2d Cir. 2012) (summary order).

Here, Plaintiff has established its *prima facie* entitlement to summary judgment by producing the Note, the Security Instrument, the Assignment, and the Notice of Default.  (*See, e.g.,* Mehring Dec., Exhs. C, E, D, F, G, and H, respectively.)   First, Plaintiff has established the existence of a debt, as, for example, on September 19, 2017, Borrower executed the Permanent Loan Note and the Building Loan Note in favor of Original Lender.  (Mehring Dec., ¶ 4).  The Note, along with the other Loan Documents, were transferred and assigned to Plaintiff, as successor in interest to Original Lender.  (Mehring Dec., ¶ 40, Exhs. G, H).  The Note evidences that the Borrower unconditionally promised to satisfy the Loan obligations under the terms and conditions of the Loan Documents.  Further, G. Subotovsky, the Managing Member of Borrower, acknowledged that after the execution of the Loan Documents, Borrower agreed to pay to Plaintiff the principal and interest amounts as it related to both the Permanent Loan and Building Loan on a monthly basis. (Freidman Dec., Exh. 24, 39:12-24)

Next, Plaintiff has established that the Borrower's obligations to satisfy the Loan was secured by first priority mortgages on the Property. Specifically, the Note was secured by, among other things, the Security Instrument, which was executed on September 19, 2017. (Mehring Dec., ¶ 12). The Security Instrument and the Assignment were each properly recorded on October 2, 2017 with the Clerk of Westchester County, New York. (Mehring Dec., ¶ 38). Importantly, G. Subotovsky testified that the Property at 80 Main Street in Ossining was the collateral offered as security for the Loan. (Friedman Dec., Exh. 24, 35:15-19).

Finally, Plaintiff has also established Borrower's default of its obligation to satisfy the debt to Plaintiff. Borrower has failed to timely and fully pay the Monthly Debt Service Payment amount due on March 1, 2020, and continuing each and every month thereafter. (Mehring Dec., ¶ 25). Borrower has also failed to timely and fully pay the escrow payments due on March 1, 2020, continuing each and every month thereafter, into the Tax and Insurance Reserve Account and the Replacement Reserve Account. (Mehring Dec., ¶ 25). This is confirmed by the testimony provided by G. Subotovsky, H. Subotovsky, Gaccione, and Clarke who all acknowledged that Borrower stopped paying Plaintiff on a monthly basis in or around March 2020. (Friedman Dec., Exh. 24, 62:19-21; Exh. 23, 29:13-19, 23-25; 30:2-3; Exh. 25, 22:4-9; 26:6-11; Exh. 26, 18:16-23). According to G. Subotovsky, the last time Borrower made a payment to Plaintiff was in February 2020. (Friedman Dec., Exh. 24, 9:18).

In summary, Plaintiff has established that it is the holder of the Note and Security Instrument (i.e., the mortgage) and that there has been a default under the Loan Documents due to Borrower's failure to pay certain sums of money to Plaintiff. Plaintiff has therefore established Borrower's liability on its claim (as it relates to monetary events of default only) and is entitled to entry of a judgment of foreclosure and sale. Accordingly, this Motion must be granted.

## C.    Relief on Summary Judgment Motion

Upon a finding of liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). To the extent Borrower contends there is an issue of fact as to the exact amount owed by Borrower to Plaintiff, such a "dispute as to the exact amount owed by mortgagor to mortgagee may be resolved after a reference pursuant to Section 1321 of the Real Property Actions and Proceedings Law ("RPAPL"), and the existence of such a dispute *does not preclude* the issuance of summary judgment directing the sale of the mortgaged property." *Gustavia Home, LLC. v. Hoyer*, 362 F. Supp. 3d 71, 82 (E.D.N.Y. 2019) quoting *Crest/Good Mfg. Co. v. Naumann*, 160 A.D.2d 831, 831-32 (2d Dep't 1990) (emphasis added). Further, and pursuant to Section 1321 of the RPAPL, the "trial court has the authority to compute the amount owed or appoint a referee to do the same." *See US Bank Trust NA v. Dingman*, No. 16-CIV-1384, 2016 WL 6905480, at *4 (S.D.N.Y. Nov. 22, 2016) (Seibel, D.J.).[4] Accordingly, Plaintiff respectfully requests this Court grant Plaintiff's motion for summary judgment of foreclosure and sale of the Property, as well as compute the amount owed to Plaintiff by Borrower.

"Any determination of damages in an action for foreclosure and sale should be determined under the terms of the Notes and Mortgages, the governing instruments . . . ." *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501, 2014 WL 4804872, at *1 (E.D.N.Y. Sept. 10, 2014) (internal quotation

---

[4] While Plaintiff requests that the Court calculate the amounts owed to Plaintiff based on the information set forth in this memorandum and supporting documents, the Court may nevertheless elect to appoint a Special Master or Magistrate Judge to "perform an accounting or resolve a difficult computation of damages", (*see, e.g.* Fed. R. Civ. P. 53). *CIT Bank, N.A. v. Metcalfe*, No. 15-CIV-1829, 2017 WL 3841852, at *1-2 (E.D.N.Y. Sept. 1, 2017). Additionally, and upon awarding summary judgment to a plaintiff in a foreclosure action, the RPAPL also allows for the appointment of a referee. *See U.S. Bank. Tr., N.A. v. Dingman*, No. 16-CIV-1384, 2016 WL 6902480, at *3 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to a foreclosing plaintiff).

marks omitted), *report and recommendation adopted*, No. 11-CV-2501, 2014 WL 4804901, E.D.N.Y. Sept. 26, 2014). A court may therefore consider "both documentary and oral evidence in computing the amount due on the mortgage." *Isaacson v. Karpe*, 445 N.Y.S.2d 37, 38 (3d Dep't 1981). Plaintiff is also entitled to seek attorney's fees and costs from Borrower according to the terms of the Loan Documents; however, as noted below, Plaintiff reserves its right to determine the amount of attorneys' fees and costs until such time as the deficiency judgment is adjudicated consistent with the July 26 Order.

Here, Plaintiff has presented the Note and Security Instrument, as well as evidence of default, sufficient to make a *prima facie* case for foreclosure, as well as sufficient evidence to demonstrate the principal, interest, and other costs and fees, due under the Note. For example, the Loan Documents entitle Plaintiff to certain costs and fees upon the occurrence of an Event of Default such as the monetary defaults at issue here. As noted, pursuant to Section 7.1(a) of the Security Instrument, upon the occurrence of an Event of Default, Plaintiff may accelerate the Maturity Date and declare the entire unpaid Debt to be immediately due and payable without any presentment, demand, protest, notice, or action of any kind whatsoever (each of which is expressly waived by Borrower), whereupon the same shall become immediately due and payable. (Mehring Dec., Exh. D, p. 12).

Further, and also pursuant to Section 7.1(a) of the Security Instrument, upon any such acceleration, payment of such acceleration shall constitute a prepayment of the Outstanding Principal Balance and any applicable Yield Maintenance, Exit Fee or other prepayment fees and charges provided for in the Loan Agreement shall then be immediately due and payable to Plaintiff. (Mehring Dec., ¶ 38; Mehring Dec., Exh. D, p. 12).

Here, on April 3, 2020, Plaintiff sent to Borrower a Notice of Default that one or more Events of Default had occurred and that Plaintiff was accelerating the obligations under the Note and other Loan Documents, demanding Borrower immediately pay to Plaintiff the outstanding principal in the amount of $5,400,000.00 and the Exit Fee in the amount of $108,000.00. (Mehring Dec., ¶ 28). Further, the Notice of Default also notified Borrower that interest would accrue on all Obligations at the Default Rate until paid in full. (Mehring Dec., ¶ 31). Accordingly, as of July 31, 2021, Borrower owes to Plaintiff $7,039,045.31, plus $100,000.000 incurred on August 3, 2021 (exclusive of attorneys' fees) itemized as below:

| Category | Total |
|---|---|
| Principal Balance | $5,400,000.00 |
| Late Payment Charge[5] | $4,244.05 |
| Interest (02/1/20 – 02/29/20) | $29,362.50 |
| Interest at the Default Interest Rate (03/1/20-7/31/21) | $997,438.76 |
| Exit Fee | $108,000.00 |
| Receiver[6] Costs and Receiver Legal Fees and Costs | $500,000.00 |
| **Total** | $7,039,045.31 |
| Additional Sum Advanced to Receiver on August 3, 2021 | $100,000.00 |
| **Total** | $7,139,045.31[7] |

(Mehring Dec., ¶ 39).

The total debt amount payable to Plaintiff as of July 31, 2021 is $7,039,045.31 exclusive of attorneys' fees and costs, plus the $100,000.00 advanced to the Receiver on or about August 3,

---

[5] The late fees were calculated as follows:

| Payment Date | Total Due | Late Fee (5%) |
|---|---|---|
| 2/1/20 Payment | $43,743.61 | $2,187.18 |
| 3/1/20 Payment | $41,137.36 | $2,056.87 |

[6] As set forth in the Friedman Dec., a receiver (the "Receiver") was appointed in this case on August 21, 2020. (Friedman Dec., ¶ 6). Further, and as discussed in more detail below, Plaintiff advanced an additional sum of $100,000.00 to the Receiver after August 1, 2021.

[7] As set forth below and in Paragraphs 12 through 15 of the Friedman Dec., and Paragraph 50 of the Mehring Dec., while Plaintiff is entitled to attorneys' fees and costs pursuant to the Loan Documents, these amounts should be determined at such time the discovery on the deficiency judgment and non-monetary events of default is completed in accordance with the July 26 Order.

2021. As noted above, this consists of $5,400,000 in unpaid principal balance, $4,244.05 in late payment charges, $29,362.50 in interest from February 1, 2020 through February 29, 2020, as well as interest at the default rate in the amount of $997,438.76 from March 1, 2020 through July 31, 2021, an exit fee of $108,000.00, and receiver costs and receiver legal fees and costs in the amount of not less than $500,000.00. However, and as discussed, Plaintiff advanced an additional sum of $100,000.00 to the Receiver since July 31, 2021, making the total sum presently payable to Plaintiff not less than $7,139,045.31.

As the Loan Documents govern Plaintiff's entitlement to fees and costs upon the occurrence of an Event of Default, pursuant to the Loan Documents, specifically Section 2.3.4 of the Loan Agreement, Plaintiff is entitled to assess a late payment charge against Borrower. (Mehring Dec., ¶ 41; Mehring Dec., Exh. A, p. 30). For example, "if any principal, interest or any other sums due under the Loan Documents is not paid by Borrower on or prior to the date which is five (5) days after the date on which it is due other than the payment of the Outstanding Principal Balance at the maturity of the Loan (including in the event of acceleration of the Maturity Date) accrued and unpaid interest, and other sums due on the Maturity Date), Borrower shall pay to Lender upon demand an amount (each a ***"Late Payment Charge"***) equal to five percent (5%) of such unpaid sum . . ." (Mehring Dec., ¶ 41; Mehring Dec., Exh. A, p. 30). Accordingly, as of July 31, 2021, Plaintiff has assessed a late payment charge against Borrower in the amount of $4,244.05.

Additionally, and as included in the table above, the Loan Agreement defines "Default Rate" to mean "a rate per annum equal to the lessor of (a) the Maximum Legal Rate and (b) five percent (5%) above the Interest Rate." (Mehring Dec., ¶ 42). Further, the Loan Agreement defines "Interest Rate" to mean "a rate equal to the sum of the following, rounded up to the nearest one-

eighth percent (1/8%): (a) the greater of (i) the LIBOR Floor Rate or (ii) the LIBOR Rate, plus (b) five and five one-hundredths percent (5.05%) per annum. (Mehring Dec., ¶ 42, Exh. A, p. 10; Exh. B, p. 7).  Pursuant to Section 2.2.4 of the Loan Agreement, upon the occurrence and during the continuance of an Event of Default (including the failure to pay all principal, interest and other sums due on the Maturity Date of the Loan, whether such Maturity Date occurs by acceleration of the maturity of the Loan or otherwise), Borrower shall pay interest on all sums accruing after the occurrence of the applicable Event of Default at the Default Rate until such sums are paid. (Mehring Dec., Exh. A, p. 27).  Therefore, interest has been accruing at the default rate since March 1, 2020.  Plaintiff has maintained an accurate accounting of costs due to Plaintiff by Borrower since the Event of Default on March 1, 2020 through July 31, 2021, annexed to the Mehring Dec. as **Exhibit L**.  As noted, this is an updated summary of an estimated accounting provided in discovery as LMRECIII_00000511, and attached to the Mehring Dec. as **Exhibit M**.

Accordingly, the total amount due and owing to Plaintiff by Borrower includes interest for the month of February 2020, and interest at the default rate since the occurrence of the Event of Default on March 1, 2020.  Accordingly, the interest owed to Plaintiff at the contractual rate for the month of February 2020 is $29,362.50.  Further, and since March 2020, the total interest accrued at the default rate as of July 31, 2021 is $997,438.76.

Further, the Loan Agreement defines "Exit Fee" to mean an amount equal to One Hundred Eight Thousand Dollars ($108,000) if the Loan is repaid on or after September 19, 2019, if the Loan is repaid while there then exists an Event of Default or if the Loan is repaid due to an acceleration of maturity. (Mehring Dec., ¶ 45; Mehring Dec., Exh. A, p. 30).  As there has been an Event of Default as well as acceleration of Borrower's obligations as it relates to the Loan, an Exit Fee is applied to the total sum due and owing to Plaintiff by Borrower. (Mehring Dec., ¶ 45).  As

a result, a charge of $108,000.00 has also been assessed against Borrower due to the acceleration of the Loan and the Events of Default. (Mehring Dec., ¶ 45).

The Loan Documents also define "Protective Advance", as "any further or subsequent advances, amounts, liabilities and indebtedness made or incurred by Lender" pursuant to the Loan Documents to "protect or preserve the Property…including all advances and costs incurred by Lender to perform any obligation of Borrower under the Loan Documents." (Mehring Dec., Exh. A, p. 11). Between August 21, 2020 and July 31, 2021, Plaintiff has advanced a sum of not less than $500,000.00 to the Receiver. This amount includes advancements made to the Receiver as follows: (1) $15,000.00 bond payment for Receiver on or about August 26, 2020 (*see* Mehring Dec., Exh. N); (2) $100,000.00 to Andrew L. Herz, Esq. as Receiver on or about September 22, 2020 (Mehring Dec., Exh. O, p. 2); (3) $100,000.00 to Andrew L. Herz, Esq. as Receiver on or about December 11, 2020 (Mehring Dec.,Exh. P, p. 4); (4) $200,000.00 to Andrew L. Herz, Esq. as Receiver on or about February 5, 2021 (Mehring Dec., Exh. Q, p. 4); and (5) $25,000.00 to Andrew L. Herz, Esq. as Receiver on or about May 27, 2021 and $60,000.00 to Andrew L. Herz, Esq. as Receiver on June 28, 2021 (Mehring Dec., Exh. R, pp. 3, 5).

Furthermore, since July 31, 2021, Plaintiff has advanced an additional sum of not less than $100,000.00 to the Receiver. (Mehring Dec., Exh. S). Accordingly, since Andrew L. Herz, Esq. was appointed as Receiver in this action on August 21, 2020, Plaintiff has advanced the total sum of not less than $600,000.00 (inclusive of the initial bond payment made by Plaintiff on behalf of Mr. Herz in the amount of $15,000.00, as, at the time of such payment, Mr. Herz had not yet set up a bank account to receive funds in his capacity as receiver.).

The Receiver utilizes the funds advanced by Plaintiff to make monthly insurance premium payments, real estate tax payments, Con Edison payments, and payments to various contractors

tasked with securing the Property and providing different services to the Property. Additionally, and upon information and belief, the Receiver utilizes the funds from Plaintiff to pay his fee as well as the costs and fees incurred by his counsel, Gould & Berg LLP. (Mehring Dec., Exhs. N-R).

Finally, Plaintiff is also entitled to attorneys' fees and costs pursuant to the terms of the Loan Documents. For example, and pursuant to Section 10.10 of the Loan Agreement (*see, e.g.* Mehring Dec., Exh. A, p. 88), any reference to "attorney fees" shall include out-of-pocket attorneys or legal fees, costs and charges incurred by Plaintiff in the collection of any Debt, the enforcement of any obligations under the Loan Documents, the protection of the Property, the foreclosure of any Security Instrument, the sale of any of the Property, and the defense of actions arising under the Loan Documents. (Mehring Dec., ¶ 49, Exh. A, p. 88). Attorneys' fees and costs provided for in the Loan Documents are to accrue whether or not Plaintiff provided notice of a default or of an intention to exercise its remedies for such a default. (Mehring Dec., ¶ 49, Exh. A, p. 88). While Plaintiff is entitled to such legal fees and costs, Plaintiff is seeking to reserve the determination of the amount of attorneys' fees and expenses in accordance with the discovery on any deficiency as set forth in the July 26 Order. (Friedman Dec., ¶¶ 12-15). To the extent the Court will not permit Plaintiff to reserve such determination, Plaintiff will file an application for attorneys' fees and expenses after this Court's determination of the Motion such that the issue is adjudicated prior to the auction and sale of the underlying Property (to the extent the Motion is granted).

Based on the foregoing, as of July 31, 2021, Plaintiff is entitled to payment in the amount of not less than $7,039,045.31 plus the $100,000.00 advanced to the Receiver on or about August 3, 2021, for a total of $7,139,045.31. Therefore, Plaintiff respectfully requests this Court grant Plaintiff's motion for summary judgment for the foreclosure and sale of the Property, and enter

judgment against Borrower and in favor of Plaintiff in the amount of not less than $7,139,045.31 as set forth in the Proposed Order.

## II.   Default Judgment as to Non-Answering Defendants

Fed. R. Civ. P. 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. *See CIT Bank NA v. Langley*, No. 1:17-cv-1548 (ADS) (AKT), 2019 WL 6050258, at *5 (E.D.N.Y. Nov. 15, 2019). Then, as here, a request for default judgment is made to the district court. *Id.* A default constitutes admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Id.* (citations omitted).

The request for default judgment as it relates to the non-answering Defendants must be granted as Defendants VSP, Upper Restoration, Noble, Geberth, Bridge Mechanical, GAC, and Shawn's Lawns' time to appear, answer, or otherwise move with respect to the Complaint and/or Amended Complaint has expired. Further, the foregoing Defendants have likewise failed to appear, answer, or otherwise move with respect to the Complaint and Amended Complaint in this action. Furthermore, certificates of default have been issued against each of the non-appearing Defendants. (*See* Friedman Dec., ¶¶ 22-27, 29; *see also* Friedman Dec., Exhs. 15-20; 22).

Pursuant to Section 1311(3) of the RPAPL, VSP, Upper Restoration, Noble, Geberth, Bridge Mechanical, GAC, and Shawn's Lawns are necessary parties as New York law dictates that "every person having any lien or incumbrance on the real property which is claimed to be subject and subordinate to the lien of the plaintiff" must be named as a party to the foreclosure action. RPAPL § 1311(3); *see also Gustavia Home, LLC v. White*, No. 16-CV-6926, 2017 WL 6403071, at *5 (E.D.N.Y. Apr. 28, 2017) (Reyes, M.J.). State law requires naming those parties because a foreclosure action extinguishes the rights of all parties with subordinate interests in the property. *Gustavia Home, LLC*, 2017 WL 6403071, at *3. A default judgment against such parties "is

appropriate where the complaint alleges 'nominal liability—i.e., that any judgments the Defaulting Defendants may have against the debtor . . . are subordinate to the Plaintiff's lien.'" *Bank of Am., N.A. v. 3301 Atlantic LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012).

Here, and as set forth in Paragraph 73 of the Amended Complaint, Plaintiff stated that "all Defendants have or claim to have some interest or lien upon the Property or some part of the Property which interest or lien, if any, is subsequent and subordinate to the lien of the Security Instrument." (*See* Friedman Dec., Exh. 4, ¶ 73). Each of the non-answering Defendants VSP, Noble, Geberth, Upper Restoration, GAC, Bridge Mechanical, and Shawn's Lawns are necessary parties as they allegedly hold interests in the Property which are subordinate to those interests of Plaintiff. Accordingly, Plaintiff's request for default judgment should be granted as to VSP, Noble, Geberth, Upper Restoration, GAC, Bridge Mechanical, and Shawn's Lawns.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court enter an Order (1) granting Plaintiff's Motion for Summary Judgment in its entirety and entering Plaintiffs Proposed Judgment and Sale Order; (2) dismissing the Answer of Defendants Borrower, G. Subotovsky and H. Subotovsky, including all affirmative defenses, with prejudice; (3) dismissing the Answer of Defendants Gaccione and Clarke, including all affirmative defenses, with prejudice; (4) granting judgment to Plaintiff in the amount of not less than $7,139,045.31 as unpaid principal balance, plus interest and default interest, and fees remained due and owing, as provided for in underlying loan documents at issue in this case; (5) entering default judgment as to non-appearing Defendants VSP, Upper Restoration, Noble, Geberth, GAC, Bridge Mechanical, and Shawn's Lawns; (6) reserving Plaintiff's right to determine the amount of attorneys' fees and costs as permitted by the underlying loan documents following the conclusion of discovery relating to the deficiency

judgment and as set forth in the Court's Order of July 26, 2021; and (7) granting such other and further relief as this Court deems just and proper.

Dated: September 1, 2021
New York, New York

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:      /s/ Robert S. Friedman
         Robert S. Friedman
         Michael T. Driscoll
         Sophia L. Cahill

         30 Rockefeller Plaza
         New York, New York 10112
         Tel.: (212) 653-8700
         Fax: (212) 653-8701
         *Attorneys for Plaintiff*