**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
LMREC III NOTE HOLDER, INC.,

                      Plaintiff,

     -against-

HUDSON EFT LLC, GUIDO SUBOTOVSKY, SAMUEL GACCIONE, HUGO SUBOTOVSKY, WILLIAM CLARKE, NOBLE ELEVATOR COMPANY INC., SHAWN'S LAWNS INC., VSP MECHANICAL INC., GEBERTH ELECTRIC INC., GAC BUILDERS LTD., BRIDGE MECHANICAL CORPORATION, UPPER RESTORATION, INC., AND JOHN DOE #1 THROUGH JOHN DOE #10,

                      Defendants.
-------------------------------------------------------------------- x

No. 7:20-cv-05063 (KMK) (PED)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Robert S. Friedman, Esq.
Michael T. Driscoll, Esq.
Sophia L. Cahill, Esq.
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: rfriedman@sheppardmullin.com
         mdriscoll@sheppardmullin.com
         scahill@sheppardmullin.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.      Plaintiff Has Met Its Initial Burden in the Motion............................................................ 2

II.     Affirmative Defenses Raised by Borrower in Opposition Fail or Do Not Apply ............. 3

       A.     Executive Orders Do Not Prohibit the Commencement of This Action ................ 4

       B.     Defendants' Affirmative Defenses of Force Majeure, Impossibility of Performance, and Frustration of Purpose Fail as a Matter of Law ......................... 8

              1.     Defendants' Defense of Force Majeure Cannot Defeat Summary Judgment ................................................................................................. 8

              2.     Defendants' Affirmative Defense of Impossibility of Performance Due to Covid-19 Cannot Defeat Plaintiffs' Motion ................................................ 9

              3.     Gaccione and Clarke's Defense of Impossibility of Performance/Frustration of Purpose Due to the Collapse of the Retaining Wall Fails as a Matter of Law ..................................................................... 12

       C.     Affirmative Defenses as Set Forth in the Declaration of Guido Subotovsky ....... 13

       D.     Plaintiff Was Required by Law to Seek Default Judgments Against the Non-Appearing Defendants ................................................................................... 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

Cases

*111 Fulton St. Invs., LLC v. Fulton Quality Foods LLC*
   2021 N.Y. Slip Op. 30348(U) (N.Y. Cnty. Sup. Ct. 2021)......................................................10

*35 E. 75th St. Corp. v. Christian Louboutin L.L.C.*
   2020 N.Y. Slip Op. 34063(U) (N.Y. Sup. Ct. 2020) ......................................................10, 11

*BKNY 1 Inc. v. 132 Capulet Holdings, LLC*
   2020 N.Y. Slip Op. 33144(U) (Kings. Cnty Sup. Ct. 2020) ....................................................10

*Bridgecity Cap. Qob LLC v. 1717 E. 8 St. LLC*
   2021 N.Y. Misc. LEXIS 562 (Kings Cnty. Sup. Ct. Feb. 9, 2021) ...........................................5

*Brown v. Eli Lilly and Co.*
   654 F.3d 347 (2d Cir. 2011).......................................................................................................2

*CAI Rail, Inc. v. Badger Mining Corp.*
   2021 U.S. Dist. LEXIS 32564 (S.D.N.Y. 2021).....................................................................12

*Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*
   No. 12-CV-3366 (LGS), 2014 WL 1386609 (S.D.N.Y. Apr. 8, 2014) .....................................2

*Clarex Ltd. v. Natixis Sec. Americas LLC*
   988 F. Supp. 2d 381 (S.D.N.Y. 2013).......................................................................................9

*In re Condado Plaza Acquisition LLC*
   620 B.R. 820 (Bankr. S.D.N.Y. 2020).......................................................................................9

*Design Options, Inc. v. Bellepointe, Inc.*
   940 F.Supp. 86 (S.D.N.Y. 1996)..............................................................................................12

*Elmsford Apartment Assocs., LLC v. Cuomo*
   469 F.Supp.3d 148 (S.D.N.Y. Jun. 29, 2020) .......................................................................6, 7

*FDIC v. Giammettei*
   34 F.3d 51 (2d Cir. 1994)...........................................................................................................3

*Fives 160th, L.L.C. v. Qing Zhao*
   2021 N.Y. Misc. LEXIS 1567 (N.Y. Cnty. Sup. Ct. 2021) .................................................8, 10

*Kel Kim Corp. v. Central Markets, Inc.*
   70 N.Y.2d 900 (1987) ................................................................................................................9

*Maesa LLC v. TPR Holdings LLC*
   No. 652685/2020, 2020 WL 5499231 (N.Y. Sup. Ct. Sept. 9, 2020).....................................10

*Money Source Inc. v. Mevs*
    2020 N.Y. Slip Op. 20181 (Suffolk Cnty. Sup. Ct. 2020) ......................................................6

*Nelkin v. Wedding Barn at Lakota's Farm, LLC*
    72 Misc.3d 1086 (Queens Cnty. Civ. Ct. 2020) ...................................................................9

*OneWest Bank, N.A. v. Raghunath*
    2015 U.S. Dist. LEXIS 131713 (E.D.N.Y. Sep. 8, 2015) ...............................................14, 15

*Prestige Deli & Grill Corp. v. PLG Bedford Holdings, LLC*
    2020 N.Y. Slip Op. 32370 (Sup. Ct. Kings Cnty. 2020) .....................................................6, 7

*Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*
    139 F. Supp. 2d 462 (S.D.N.Y. 2001) ..................................................................................2

*Rockland Dev. Assoc. v. Richlou Auto Body, Inc.*
    570 N.Y.S.2d 343 (2d Dep't 1991) .....................................................................................12

*Secured Asset Mgmt. v. Dushinsky*
    No. 17-cv-05588 (DLI)(CLP), 2019 WL 4861411 (E.D.N.Y. Sept. 30, 2019) .........................4

*Structure Tone, Inc. v. Universal Servs. Grp.*
    929 N.Y.S.2d 242 (1st Dep't 2011) ....................................................................................12

*UBS Real Estate Sec. v. Gramercy Park Land LLC*
    2009 NY Slip. Op. 33464(U), (N.Y. Cnty. Sup. Ct. 2009) ....................................................9

*Wells Fargo Bank, N.A. v. Mullings*
    2015 N.Y. Slip Op. 32511 (N.Y. Sup. Ct. 2015) .................................................................14

Statutes

New York Banking Law § 9-X ................................................................................................6

Other Authorities

Fed. R. Civ. P. 8(c) ...............................................................................................................12

Rule 56.1 ................................................................................................................................3

Plaintiff LMREC III Note Holder, Inc. ("Plaintiff"), submits this reply memorandum of law (the "Reply") in opposition to the *Memorandum of Law in Opposition to Plaintiff LMREC III Note Holder Inc.'s Motion for Summary Judgment* (Dkt. No. 192) (the "Borrower Opp.") of the Defendants Borrower, G. Subotovksy, and H. Subotovksy, and *Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment* (Dkt. No. 196) (the "Gaccione/Clark Opp.") of Defendants Gaccione and Clarke and in support of Plaintiff's Motion for Summary Judgment (Dkt. Nos. 182-187) (the "Motion").[1] In further support of the Motion, Plaintiff respectfully states as follows:[2]

## PRELIMINARY STATEMENT

Defendants raise no genuine issue of material fact as to whether Plaintiff's Motion establishes the elements for summary judgment in this mortgage foreclosure action: There are no issues of fact regarding the Note, the Mortgage, which pledged the Property as security for the obligations of the Note, and Borrower's default of the Loan Documents due to non-payment on March 1, 2020. Defendants' Oppositions place none of this in question. Instead, Defendants collectively assert inapposite and irrelevant factual and legal arguments that are designed to complicate the record. For example, Defendants argue that it is Plaintiff's burden on a summary judgment motion to disprove all of the affirmative defenses asserted by Defendants, that it was impossible to perform under the terms of the various Loan Documents due to, *inter alia*, the COVID-19 pandemic, and, for the third time,[3] that Borrower suffered financial hardship as a result

---

[1] Defendants Gaccione and Clarke have adopted the arguments made by Defendants Borrower, G. Subotovsky, and H. Subotovsky as set forth in Gaccione/Clarke Opposition. Accordingly, Plaintiff submits one reply brief addressing all arguments collectively raised by Defendants.

[2] All capitalized terms used but not defined in this Reply shall have the meanings ascribed to such terms in the Motion.

[3] Borrower first argued it experienced financial hardship from COVID-19 in its letter request for a conference to discuss the potential filing of a dismissal motion (Dkt. No. 43) (which it never filed), and again in opposition to Plaintiff's application for the appointment of a receiver (Dkt. No. 46).

of the COVID-19 pandemic which, in turn, purportedly prohibits the underlying foreclosure action. However, none of the arguments raised in opposition by Defendants are applicable, and Defendants have failed to raise any genuine issue of material fact preventing summary judgment. Accordingly, Plaintiff is entitled to summary judgment as a matter of law and Plaintiff respectfully requests the Court grant the Motion.

## ARGUMENT

### I.     Plaintiff Has Met Its Initial Burden in the Motion

As set forth in detail in Plaintiff's Memorandum of Law, Plaintiff met its initial burden in demonstrating there is no genuine dispute as to any material fact as it relates solely to the events of monetary default(s) as committed by Borrower.  Summary judgment in a mortgage foreclosure action is appropriate where the plaintiff provides a copy of the mortgage, the unpaid note, and evidence of default.  *See Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*, No. 12-CV-3366 (LGS), 2014 WL 1386609, at *4 (S.D.N.Y. Apr. 8, 2014).  Here, Plaintiff has provided the Court with the Note and Mortgage and the underlying Loan Documents, as well as evidence of Borrower's failure to make a payment in March 2020. "Once the plaintiff has established its *prima facie* case by presenting the [n]ote, [m]ortgage and proof of default, the [m]ortgagee has a presumptive right to foreclose." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465-66 (S.D.N.Y. 2001).

As Plaintiff met its initial burden, Borrower must come forward with specific, admissible evidence demonstrating the existence of a genuine dispute of material fact and "must do more than simply show that there is some metaphysical doubt . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly and Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  Borrower has failed to demonstrate the existence of a genuine dispute of material fact as to the elements of a mortgage foreclosure.  For example, Defendants do not

dispute the validity of the Note, the Mortgage, and/or the Loan Documents. Further, Borrower concedes that no payment was made in March 2020 as testified to by G. Subotovsky, which Plaintiff contends constitutes an event of monetary default under the Loan Documents. (Exh. 24, 60:17-22, Friedman Dec.[4]). In their Rule 56.1 Counter-Statement of Undisputed Material Facts, Defendants Gaccione and Clarke admit that Borrower did not make any payment in March 2020, and every month thereafter. (*See* ¶ 50, Dkt. No. 195). In response to the Motion, Defendants only make unsubstantiated claims that this action is prohibited due to certain Executive Orders and/or Borrower is excused from performance, neither of which apply here. Accordingly, Plaintiff's Motion must be granted.

## II.     Affirmative Defenses Raised by Borrower in Opposition Fail or Do Not Apply

Defendants raise a number of affirmative defenses in their Answers, although not all have been raised in the respective oppositions. As an initial matter, Borrower incorrectly argues that Plaintiff "failed to dispute plaintiff's (*sic*) affirmative defenses" relating to COVID-19, and the affirmative defenses of impracticability and impossibility. (Borrower Opp., pp. 11-20). Borrower does not cite to any precedent that the burden to disprove a defendant's affirmative defenses lies with the movant on a summary judgment application. In fact, Second Circuit precedent states that the *non-moving* party bears the burden of proving its affirmative defenses, and therefore, the moving party is *not required* to support its summary judgment motion with affidavits or other materials that tend to disprove the defenses. *See FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). Thus, Plaintiff is not required to disprove Defendants' affirmative defenses on a summary judgment motion in order to prevail and, as such, this Reply addresses only those affirmative defenses as raised by Defendants in opposition to the Motion. Even if such a burden were on

---

[4] The "Friedman Dec." refers to the Declaration of Robert S. Friedman, dated September 1, 2021 (Dkt. No. 185).

Plaintiff, as set forth below, Defendants' affirmative defenses are without merit and Defendants have failed to meet their burden to demonstrate the existence of a genuine issue of fact in response to Plaintiff's Motion.

### A. Executive Orders Do Not Prohibit the Commencement of This Action

As set forth in Borrower's Second, Fourth, and Seventh Affirmative Defenses, Borrower again argues this action is prohibited due to Executive Orders 202.8, 202.28, 202.48, and 202.55.1 (collectively, the "Executive Orders") issued in response to the COVID-19 pandemic.[5] Borrower initially raised this argument in its pre-motion letter request for a conference to discuss the filing of a motion to dismiss, and again in Opposition to Plaintiff's Motion to Appoint a Receiver. (Dkt. Nos. 43, 46). The Court rejected Borrower's argument:

> Regarding the Governor Cuomo Executive Orders, the complaint does allege default other than nonpayment, so it's not clear to me the Executive Orders really apply here at all, and the first nonpayment occurred on March 1st, which was before New York shut down in the wake of the I think recognition of the impact and scope of the pandemic.

(p. 29, Exh. A, Friedman Reply Dec.[6]). Indeed, Borrower in its present Opposition, provides no admissible evidence demonstrating there is a direct correlation between the non-payments by Borrower and its financial hardship due to COVID-19. (Borrower Opp., p. 8). Even if such evidence was presented, the Executive Orders do not apply here.

---

[5] While not contained within the Borrower Opp., Borrower attempts to rely upon its Seventh Affirmative Defense that Plaintiff violated Executive Order 202.28 by service of a Notice of Default on April 3, 2020, as set forth in the Declaration of Guido Subotovsky submitted in opposition to the Motion (the "Subotovsky Dec."). However, the Executive Orders do not prohibit sending of default notices or accelerating a loan pursuant to contractual requirements. Further, a notice of default does not constitute the initiation of a foreclosure proceeding. In fact, a contractual notice of default, or notice to cure, is strictly a condition precedent to commencing any type of foreclosure proceeding. *See Secured Asset Mgmt. v. Dushinsky*, No. 17-cv-05588 (DLI)(CLP), 2019 WL 4861411, at *11 (E.D.N.Y. Sept. 30, 2019).

[6] The "Friedman Reply Dec." refers to the Declaration of Robert S. Friedman, dated October 27, 2021.

New York courts have found the Executive Orders do *not* apply to similarly situated borrower-entities.  For example, Executive Order 202.28, by its plain terms, "only applies to someone that is eligible for unemployment insurance or benefits under state or federal law." *Bridgecity Cap. Qob LLC v. 1717 E. 8 St. LLC*, 2021 N.Y. Misc. LEXIS 562 (Kings Cnty. Sup. Ct. Feb. 9, 2021) (stating that Executive Orders are not applicable to a borrower which owned properties that were the subject of underlying mortgages as borrower was not eligible for benefits set forth in the Executive Orders, and borrower failed to demonstrate decrease in income due to COVID-19).  Here, while Borrower stated that it is entitled to certain benefits, it has not provided any admissible evidence to demonstrate it either (1) applied for such benefits and/or (2) received such benefits.  Borrower has also not demonstrated how its income decreased due to COVID-19, only claiming in a conclusory fashion it suffered "financial hardship."  Furthermore, Borrower's payment default on March 1, 2020 occurred prior to the Executive Orders.  Therefore, the Executive Orders are inapplicable to, and do not bar, the commencement of this foreclosure action.[7]

Notwithstanding the fact the Executive Orders *do not* apply, even if they did apply, Borrower has yet again failed to specifically demonstrate how it suffered financial hardship due to COVID-19.  The Property is vacant and there is no reliance upon income from rental of the Property or otherwise, nor has there been since, at the latest, August 2018.  It is therefore impossible for the Borrower to have suffered financial hardship due to COVID-19 when it had no source of income to begin with.  Further, Borrower provides no information or supporting

---

[7] The Executive Orders likewise do not prohibit the initiation of foreclosure proceedings arising from events of non-monetary default.  While not the subject of the underlying Motion, as set forth in the Amended Complaint, Borrower committed non-monetary events of default by allowing several liens to encumber the Property, neglecting to adequately protect, maintain, and preserve the Property, and financing insurance premiums.

materials, such as financial resources, payment history and/or an explanation of current circumstances, to support the position that it has experienced financial hardship solely due to COVID-19.[8]

Defendants also argue Plaintiff's Motion should be denied because Plaintiff "elected to forego Plaintiff's opportunity to examine Defendants' actions and the impact of COVID-19." (Borrower Opp., p. 14). This is inaccurate and ignores Plaintiff's repeated attempts to obtain written discovery on the very issue of financial hardship experienced by Borrower due to the COVID-19 pandemic. For example, Plaintiff specifically requested Borrower provide "all Documents Borrower intends to rely upon in order to demonstrate that it has suffered financial hardship due to the COVID-19 pandemic . . . ."[9] (Exh. B, Friedman Reply Dec.). Borrower never responded to the foregoing discovery requests. As a result, and even if the Executive Orders applied, which they do not, Borrower has not submitted any evidence in admissible form demonstrating it suffered financial hardship due to COVID-19 as required by the Executive Orders.

Borrower cites two cases in support of its position regarding COVID-19, but these are inapposite: *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F.Supp.3d 148 (S.D.N.Y. Jun. 29, 2020) and *Prestige Deli & Grill Corp. v. PLG Bedford Holdings, LLC*, 2020 N.Y. Slip Op. 32370

---

[8] Section 9-X of the New York Banking Law, which governs residential mortgages, while not binding, is instructive as to the application of the Executive Orders. For instance, a New York court determined "[t]here is little doubt that the new statute is designed to address mortgages affected by the COVID-19 pandemic and should not apply to borrowers who defaulted before the start date of March 7, 2020." *See Money Source Inc. v. Mevs*, 2020 N.Y. Slip Op. 20181, at *6 (Suffolk Cnty. Sup. Ct. 2020). This is helpful guidance, especially given the fact Borrower failed to make a payment due March 1, 2020.

[9] Plaintiff made repeated attempts to collect responses to these demands as demonstrated in the emails annexed to the Friedman Reply Dec. as **Exhibits C** and **D**. Despite these requests, and the Court-imposed discovery deadline relating to issues of monetary default of August 4, 2021, Borrower *never* produced documents supporting the position it experienced financial hardship due to the COVID-19 pandemic.

(Sup. Ct. Kings Cnty. 2020). In *Elmsford*, three *residential* landlords sought to enjoin the enforcement of the Executive Orders, specifically Executive Order 202.28 and the moratorium on residential evictions. Borrower, however, makes no reference to the arguments actually made by the landlord plaintiffs in *Elmsford*. For example, and unlike Borrower here, the landlords in *Elmsford* argued Executive Order 202.28 violated the Takings Clause of the Fifth Amendment (*id.* at 162), the Contracts Clause (*id.* at 171), the Due Process Clause, and/or the Petition Clause (none of which are argued here). While the Court in *Elmsford* upheld the residential eviction moratorium, it made *no findings* as it related to any foreclosure moratorium in the context of monetary events of default arising out of a commercial property. *Id.* at 171. Accordingly, *Elmsford* is not applicable here.

Borrower also cites to *Prestige Deli*, in which a commercial tenant, rather than a borrower/property owner, sought an injunction to stay the cure period in order to cure the default and avoid a forfeiture. 2020 N.Y. Misc. LEXIS 3401 at *2. The landlord in *Prestige Deli* had served a notice to cure, which the tenant ignored, and a subsequent notice of termination. *Id.* at *1. The court held that the Executive Orders prohibited the enforcement of a termination of a commercial lease for sixty (60) days starting June 20, 2020, but gave no indication whether the commencement of foreclosure proceedings against a borrower/property owner were permitted to proceed. As the Borrower here is not a tenant of a commercial lease and not seeking an injunction, the findings of *Prestige Deli* do not apply. Accordingly, the Executive Orders, whether they apply or not, do not serve to bar the underlying commercial foreclosure action and Plaintiff's Motion must be granted.

### B. Defendants' Affirmative Defenses of Force Majeure, Impossibility of Performance, and Frustration of Purpose Fail as a Matter of Law

#### 1. Defendants' Defense of Force Majeure Cannot Defeat Summary Judgment

With respect to its Thirteenth Affirmative Defense, Borrower argues Plaintiff failed to dispute the COVID-19 pandemic was a force majeure event, and that COVID-19 was in fact a force majeure event which prevents a claim that Borrower defaulted under the Loan Documents. As an initial matter, it is undisputed by Borrower that the Loan Documents do not contain a force majeure clause. (Borrower Opp., p. 16). Despite this admission, Borrower argues the absence of a force majeure provision does not prevent the doctrine's applicability here. However, force majeure is contractual and New York courts will not imply the existence of such a provision into a contract in light of circumstances such as a pandemic. *See Fives 160th, L.L.C. v. Qing Zhao*, 2021 N.Y. Misc. LEXIS 1567, at *3 (N.Y. Cnty. Sup. Ct. 2021) (declining to imply a force majeure provision due to the COVID-19 pandemic in the absence of a force majeure clause). Notwithstanding the fact that there is no force majeure provision here (or provision that excuses performance in the event of a pandemic), even if there were such a provision, these clauses are narrowly construed and a party's performance excused "only if the force majeure clause specifically includes the event that actually prevents a party's performance . . . ." *Id.* (internal citation omitted). Here, Borrower admits the Loan Documents do not contain a clause excusing performance in the event of a pandemic or government regulations. As the Loan Documents do not contain any such provision, the court cannot simply imply that such a clause exists due to the COVID-19 pandemic.

Furthermore, Borrower argues that the closure of business, financial, and government offices due to COVID-19 restricted Defendants' ability to "seek alternate sources to pay their loan

obligations."  This argument is baseless as Borrower ignores the well-known fact that businesses continued to operate remotely during the early months of COVID-19, but more importantly, does not produce evidence of any specific closures preventing Borrower's payment obligations. Borrower's hollow argument is supported by a 2020 Queens County Civil Court decision in which the contract under review contained a force majeure provision, unlike the Loan Documents here. *See Nelkin v. Wedding Barn at Lakota's Farm, LLC*, 72 Misc.3d 1086, 1090-91 (Queens Cnty. Civ. Ct. 2020).  Accordingly, the rationale of *Nelkin* does not apply. Thus, Borrower's argument regarding force majeure fails.

### 2. Defendants' Affirmative Defense of Impossibility of Performance Due to Covid-19 Cannot Defeat Plaintiffs' Motion

In its Fourteenth Affirmative Defense, and while unclear from the Borrower Opp., Borrower appears to argue it was impossible to perform under the Loan Documents due to COVID-19.  Under New York law, "impossibility excuses a party's performance only when (1) the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" and (2) the impossibility was "produced by an unanticipated event that could not have been foreseen or guarded against in the contract."  *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987).  Impossibility does not excuse performance of a contract merely because the performance would be burdensome or unprofitable.  *In re Condado Plaza Acquisition LLC*, 620 B.R. 820, 840-41 (Bankr. S.D.N.Y. 2020) (citing New York law for explanation of impossibility of performance).

New York courts construe the impossibility defense very narrowly.  *Clarex Ltd. v. Natixis Sec. Americas LLC*, 988 F. Supp. 2d 381, 394 (S.D.N.Y. 2013).  "[W]here the impossibility of performance is caused only by financial difficulty or economic hardship, even to the point of

bankruptcy or insolvency, contractual performance is not excused." *UBS Real Estate Sec. v. Gramercy Park Land LLC*, 2009 NY Slip. Op. 33464(U), at *16 (N.Y. Cnty. Sup. Ct. 2009).

The only purported impediment preventing Borrower from making payments to Plaintiff after February 2020 is financial hardship due to COVID-19 and Borrower's supposed inability to obtain financing due to business closures. New York courts have been not been receptive to parties invoking COVID-19 as a pretext to avoid its contractual obligations, such as Borrower attempts to do here. *See, e.g.*, *BKNY 1 Inc. v. 132 Capulet Holdings, LLC*, 2020 N.Y. Slip Op 33144(U), *2-3 (Kings. Cnty Sup. Ct. 2020) (holding that mandatory closure of restaurant business during April and May 2020 did not relieve restaurant owner of its contractual obligation to pay rent where no provision in lease excused restaurant owner from timely and fully paying rent); *111 Fulton St. Invs., LLC v. Fulton Quality Foods LLC*, 2021 N.Y. Slip Op. 30348(U), at *4 (N.Y. Cnty. Sup. Ct. 2021) (holding that failure to make full and complete payment on March 1, 2020 was not due to impacts of the COVID-19 pandemic and therefore, common law defense of frustration of purpose did not create an issue of fact); *Maesa LLC v. TPR Holdings LLC*, No. 652685/2020, 2020 WL 5499231, at *1 (N.Y. Sup. Ct. Sept. 9, 2020) ("[D]efendant submits no evidence or explanation of how performance was impossible . . . rather than being difficult due to the pandemic"); *35 E. 75th St. Corp. v. Christian Louboutin L.L.C.*, 2020 N.Y. Slip Op. 34063(U), at *6-7 (N.Y. Sup. Ct. 2020) (dismissing impossibility defense in the context of COVID-19 noting that while a defendant's performance may have been rendered financially disadvantageous by *circumstances* unforeseen at the time of the contract's making, such financial disadvantage *was foreseeable*, even if the precise causes of such disadvantage were not specified).

Even if the Court were to find that certain aspects of COVID-19 were unforeseeable, Borrower produces no evidence to argue that an economic downturn and/or financial

disadvantages were so unforeseeable such that they could not have been contracted around,[10] especially as Borrower is a sophisticated business entity and such a provision could have been included in the Loan Documents. While Defendants have cited the testimony of Plaintiff as to whether COVID-19 was anticipated, it has no bearing on the overall analysis of whether Borrower's performance under the Loan Documents was rendered impossible due to COVID-19, which it was not. Further, the Borrower produces no evidence, nor does Borrower cite to any COVID-era precedent, that the foundation of the Loan Documents has been destroyed by COVID-19 such that Borrower is unable to perform. The building at the Property has been vacant since, at the latest, September 2018, and, despite having depleted the interest reserve account around that time, Borrower continued to make payments to Plaintiff through February, 2020, without relying on any income (rental or otherwise) from the Property. Further, Borrower admits that "no government order directly made [Borrower's] performance impossible." (Borrower Opp., p.16). As noted by the court in *Louboutin*, "unforeseen economic forces, even the horrendous effects of a deadly virus, do not automatically permit the court to simply rip up a contract signed between two sophisticated parties." 2020 N.Y. Misc. LEXIS 10423 at *5. Accordingly, the affirmative defenses relating to impossibility of performance due to COVID-19 fail and Plaintiff's Motion must be granted.

---

[10] Here, like in *Fives 160th LLC*, the Loan Documents were entered into by commercial parties "who could have anticipated that future events might result in financial disadvantage on the part of either party, even if the precise cause or extent of such financial disadvantage was not foreseen at the time the contract was executed." 2021 N.Y. Misc. LEXIS 1567 at *4-5 (holding the impossibility of performance doctrine did not relieve defendants of their obligations due to COVID-19 and effects on its business).

### 3. Gaccione and Clarke's Defense of Impossibility of Performance/Frustration of Purpose Due to the Collapse of the Retaining Wall Fails as a Matter of Law

Defendants Gaccione and Clarke also include an impossibility of performance and/or frustration of purpose argument regarding Borrower's inability to meet its financial obligations due to the collapse of the retaining wall at the Property.[11]

In addition to the doctrine of impossibility of performance, as discussed above, the frustration of purpose doctrine "offers a defense against enforcement of a contract when the reasons for performing the contract cease to exist due to an unforeseeable event which destroys the reasons for performing the contract." *Structure Tone, Inc. v. Universal Servs. Grp.*, 929 N.Y.S.2d 242, 246 (1st Dep't 2011). "In order to be invoked, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, the transaction would have made little sense." *CAI Rail, Inc. v. Badger Mining Corp.*, 2021 U.S. Dist. LEXIS 32564, *18 (S.D.N.Y. 2021). In other words, "the inducing circumstance which no longer exists must be the foundation of the contract." *Id*. In addition, it is "not enough that the transaction has become less profitable for the affected party or even that [the affected party] will sustain a loss." *Rockland Dev. Assoc. v. Richlou Auto Body, Inc.,* 570 N.Y.S.2d 343, 344 (2d Dep't 1991).

This argument must fail as a matter of law. While it may be the case the parties did not anticipate the collapse of the retaining wall, it did not frustrate the overall purpose of the Loan Documents or alleviate Borrower of its monthly payment obligations. It is insufficient that the

---

[11] Gaccione and Clarke do not specifically assert this affirmative defense in their Answer. Likewise, Borrower does not specifically allege in any of its affirmative defenses that it was impossible to perform under the terms of the Loan Documents or the purpose of the Loan Documents was frustrated, due to the collapse of the retaining wall. As Defendants did not plead this affirmative defense consistent with Fed. R. Civ. P. 8(c), this defense is deemed waived. *See Design Options, Inc. v. Bellepointe, Inc.*, 940 F.Supp. 86, 91 (S.D.N.Y. 1996)("[I]f a party fails to plead an affirmative defense, that defense is deemed to have been waived).

collapse of the retaining wall caused Borrower to sustain a loss due to the lack of rental income or that Borrower's business plans at the Property became less profitable. Notwithstanding the lack of rental income, however, and as acknowledged during the deposition of G. Subotovsky, Borrower *continued* to make consistent payments to Plaintiff every month until March 2020, even following the collapse of the retaining wall in August 2018. (Exh. 24, pp. 50-56, Friedman Dec.). It cannot therefore logically follow that the collapse of the retaining wall made it "objectively impossible" for Borrower to perform under the terms of the Loan Documents as Borrower continued to perform for a period of not less than eighteen months. Accordingly, this argument is without merit.

### C.  Affirmative Defenses as Set Forth in the Declaration of Guido Subotovsky

Borrower improperly raises arguments in the Subotovsky Dec. addressing certain of Borrower's affirmative defenses not raised in the Borrower Opp. For example, and relating to Borrower's Fifth Affirmative Defense, Borrower argues that it "substantially relied on Plaintiff's promise to refrain from litigation against [Borrower] while Defendant [Borrower] commenced litigation against its insurers . . . ." Borrower, however, has failed to proffer any evidence in admissible form to demonstrate the existence of any such promise on behalf of Plaintiff. Further, Plaintiff provided the following testimony regarding this defense:

> Q:  Did the plaintiff ever tell anyone at Hudson EFT that it would refrain from commencing an action as long as Hudson EFT commenced an action against its insurers to get payment for the damages that were sustained as a result of the retaining wall that collapsed at 60 Main Street, Ossining, New York. *[Objection noted by counsel for Plaintiff]…*
>
> A:  No, we never made an agreement with them where we would say that.

(Exh. A, 106:8-19, Marshall Dec.[12]). Accordingly, there is no support in fact or law for Borrower's Fifth Affirmative Defense. Furthermore, in its Twelfth Affirmative Defense and as set forth in the Subotovsky Dec., Borrower argues that Plaintiff is equitably estopped from commencing this action because Plaintiff permitted Borrower to attempt to recover against its insurers for damages sustained as a result of the collapse of the retaining wall. It is unclear the legal basis for why Plaintiff would be estopped from commencing this action based upon Borrower pursuing a separate action against the owners of the adjacent property for the collapse of the retaining wall. Borrower offers no support either in fact or in law for the application of this defense and accordingly, this defense likewise has no merit and cannot defeat the Motion.

### D. Plaintiff Was Required by Law to Seek Default Judgments Against the Non-Appearing Defendants

Contrary to the statements in the Subotovsky Dec., the July 26, 2021 Order is *expressly* not a count-by-count limitation of the Motion, but rather limited by *type* of default (*i.e.* monetary defaults). This Motion is limited to events of monetary default only, and while Plaintiff believes this is clear from its moving papers, for the avoidance of any doubt, Plaintiff seeks foreclosure of the Property solely due to monetary default by the Borrower. Plaintiff also seeks dismissal of Affirmative Defenses that relate solely to the issues of monetary default. Finally, G. Subotovsky attempts to argue Plaintiff's request to default the non-appearing defendants is not proper pursuant to the July 26, 2021 Order. First and foremost, Borrower, G. Subotovsky, and H. Subotovsky do *not* represent the non-appearing defendants and have no basis to argue on their behalf. *See Wells Fargo Bank, N.A. v. Mullings*, 2015 N.Y. Slip Op. 32511, at \*5 (N.Y. Sup. Ct. 2015) ("[t]he defendant attacks the plaintiffs' papers on behalf of the non-appearing defendants. The defendant lacks standing to make any such claims."). Further, courts have held that entry of default against

---

[12] The "Marshall Dec." refers to the Declaration of Adam M. Marshall, dated October 6, 2021 (Dkt. No. 195).

non-appearing defendants is appropriate where the complaint alleges "nominal liability" – "i.e., any judgments or liens a defendant may have against the property [which] are subordinate to the plaintiff's lien."  *OneWest Bank, N.A. v. Raghunath*, 2015 U.S. Dist. LEXIS 131713, at *8 (E.D.N.Y. Sep. 8, 2015).  As explained in the Motion, the judgment lienors named in this action are necessary parties to a mortgage foreclosure action, such that they have a lien upon the Property which is claimed to be subject and subordinate to the lien of Plaintiff.  "This rule derives from the underlying objective of foreclosure actions – to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchase at the judicial sale." *Id.* (citations omitted).  Accordingly, these arguments are baseless.

## CONCLUSION

For the reasons set forth, Plaintiff respectfully requests its Motion be granted in its entirety.

Dated: New York, New York
October 27, 2021

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:  */s/ Robert S. Friedman*
    Robert S. Friedman
    Michael T. Driscoll
    Sophia L. Cahill
    30 Rockefeller Plaza
    New York, New York 10112
    Tel.: (212) 653-8700
    *Attorneys for Plaintiff*