UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LMREC III NOTE HOLDER, INC,

                            Plaintiff,

    v.

HUDSON EFT LLC *et al.*,

                            Defendants.

No. 20-CV-5063 (KMK)

OPINION & ORDER

Appearances:
Sophia Louise Cahill, Esq.
Michael T. Driscoll, Esq.
Robert Sanford Friedman, Esq.
Ira Martin Schulman, Esq.
Sheppard, Mullin, Richter & Hampton LLP
New York, NY
*Counsel for Plaintiff*

Gary Scott Rosen, Esq.
Jared Michael Rosen, Esq.
Rosen Law LLC
Great Neck, NY
*Counsel for Hudson Defendants*

Michael Harold Maizes, Esq.
Maizes & Maizes, LLP
Bronx, NY
*Counsel for Hudson Defendants*

Adam Matthew Marshall, Esq.
Erik Ortmann, Esq.
Kaufman Dolowich & Voluck LLP
Woodbury, NY
*Counsel for Defendants Clark & Gaccione*

Kim P. Berg
Gould & Berg LLP
White Plains, NY
*Counsel for Receiver*

KENNETH M. KARAS, District Judge:

Latitude Management Real Estate Capital III ("LMREC") Note Holder, Inc. ("Plaintiff") brings this commercial mortgage foreclosure Action against Hudson EFT LLC ("Hudson"), Bridge Mechanical Corporation ("Bridge Mechanical"), GAC Builders Ltd. ('GAC"), Geberth Electric Inc. ("Geberth"), Noble Elevator Company Inc. ("Noble"), Shawn's Lawns Inc. ("Shawn's Lawns"), Upper Restoration, Inc. ("Upper Restoration"), VSP Mechanical Inc ("VSP"), William Clarke ("Clarke"), Samuel Gaccione ("Gaccione"), Guido Subotovsky, Hugo Subotovsky, and John Does 1–10 (collectively, "Defendants") involving real property located at 80 Main Street, Ossining, New York.  (*See generally* Am. Compl. (Dkt. No. 66).)

Before the Court are two Motions: 1) Plaintiff's Motion for Summary Judgment against Hudson, Guido Subotovsky, Hugo Subotovsky (the "Hudson Defendants"), Gaccione, and Clarke; and 2) Plaintiff's Motion for Default Judgment against VSP, Upper Restoration, Noble, Geberth, GAC, Bridge Mechanical, and Shawn's Lawns.  (*See* Not. of Mot. (Dkt. No. 182).)  For the reasons articulated below, the Motion for Default Judgment is denied, and the Motion for Summary Judgment is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Statement Pursuant to Local Rule 56.1 (Pl.'s Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("Pl.'s 56.1") (Dkt. No. 183)), the Hudson Defendants' Statement Pursuant to Local Rule 56.1 (Hudson Defs.' Rule 56.1 Statement in Opp'n to Mot. for Summ. J ("Hudson Defs.' 56.1") (Dkt. No. 193)), Gaccione and Clarke's Statement Pursuant to Local Rule 56.1 (Clark and Gaccione Rule 56.1 Statement in Opp'n to Mot. for Summ. J. ("Clarke and Gaccione's 56.1") (Dkt. No. 195)), and Plaintiff's Counter

Statement Pursuant to Local Rule 56.1 (Pl.'s Rule 56.1 Counter Statement in Supp. of Mot. for Summ. J. ("Pl.'s Counter 56.1") (Dkt. No. 207)), and the admissible evidence submitted by the Parties. The facts are recounted "in the light most favorable to" the Hudson Defendants, Gaccione, and Clark, the non-movants on the claims subject to Federal Rule of Civil Procedure 56. *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).

On September 19, 2017, LMREC entered into a Permanent Loan Agreement and a Building Loan Agreement (together, the "Loan Agreement") with Hudson. (Pl.'s 56.1 ¶ 29.)[1] On the same day, Hudson executed a Consolidated Amended and Restated Mortgage Promissory Note (the "Permanent Loan Note"). (*Id.* ¶ 30.) Under the Permanent Loan Note, LMREC and Hudson consolidated prior notes secured by prior existing mortgages in the aggregate outstanding principal amount of $4,905,000. (*Id.* ¶¶ 30–31.) Hudson also executed a Building Loan Mortgage Promissory Note for $495,000. (*Id.* ¶ 34.) The Permanent Loan Note and the Building Loan Note (together, the "Note") were both secured by a property located at 80 Main Street, Ossining, New York (the "Property"). (*Id.* ¶¶ 33, 36.) According to Clarke and Gaccione, the purpose of the loan was to finance Hudson's construction of a residential apartment building on the Property. (Clarke & Gaccione's 56.1 ¶ 78.) The Permanent Loan Security Instrument and the Building Loan Security Instrument (together, the "Security Instrument") were recorded in the Office of the Westchester County Clerk on October 2, 2017. (Pl.'s 56.1 ¶ 38.) The Loan Agreement, the Note, and the Security Instrument are together known as the "Loan Documents." (*Id.* ¶ 39.)

---

[1] Guido Subotovsky is the managing member of Hudson, and Hugo Subotovsky, Gaccione, and Clarke are its other members. (*Id.* ¶ 2.)

3

LMREC assigned the Loan Documents to Plaintiff as successor in interest. (*Id.* ¶ 40.) On or about September 19, 2017, the date of the assignment, LMREC transferred the Loan Documents to Plaintiff, which is now the present holder and owner of the Loan Documents. (*Id.* ¶ 42.) The assignment was memorialized in a Loan Agreement Assignment, which was recorded in the Office of the Westchester County Clerk on October 2, 2017. (*Id.* ¶¶ 40–41.)

According to Plaintiff, Hudson is in default under the Loan Documents because it has failed to make payments to Plaintiff since March 2020. (*Id.* ¶¶ 49–50; *see also* Clarke & Gaccione 56.1 ¶ 49.) Plaintiff also alleges non-monetary events of default. (*See generally* Am. Compl.) Plaintiff reached out to Hudson on March 10, 2020 and March 12, 2020 about the missed payment that was due on March 1, 2020, but received no response. (Pl.'s 56.1 ¶ 52.) On April 3, 2020, Plaintiff sent Hudson a Notice of Default by mail. (*Id.* ¶ 53.) Plaintiff also sent copies to Guido Subotovsky, Hugo Subotovsky Gaccione, and Clarke via email. (*Id.*) In the Notice of Default, Plaintiff notified Hudson that it was accelerating its obligations under the Loan Documents, specifically demanding that Hudson immediately pay Plaintiff a total of $5,588,131.41, which included the outstanding principal in the amount of $5,400,000, an exit fee in the amount of $108,000, and other payments due under the Loan Documents. (*Id.* ¶¶ 54–55.) The Notice of Default also notified Hudson that interest would accrue on its obligations under the Loan Documents until they were paid in full. (*Id.* ¶ 56.)

Plaintiff has calculated that, as of July 31, 2021, Hudson owes Plaintiff a total of $7,139,045.31, excluding attorney's fees and costs. (*Id.* ¶ 67.) This consists of the principal balance of $5,400,000, $4,244.05 in late payment fees, $29,362.50 in interest from February 1, 2020 through February 29, 2020, interest at the default rate in the amount of $997,438.76 from

4

March 1, 2020 through July 31, 2021, an exit fee of $108,000, and receiver costs and receiver legal fees and costs of $600,000.  (*Id.* ¶ 68.)

Plaintiff seeks partial summary judgment as to Hudson's liability on Count I of the Amended Complaint, which alleges that Plaintiff is entitled to foreclosure of the Property and demands $7,139,045.31 in relief.  (*See* Not. of Mot.; Am. Compl. ¶¶ 78–81.)

B.  Procedural History

Plaintiff filed its Complaint on July 1, 2020.  (Dkt. No. 1.)  On July 7, 2020, Plaintiff filed a Notice of Pendency.  (Dkt. No. 28.)  On August 5, 2020, the Hudson Defendants filed a stipulation by which Plaintiff and the Hudson Defendants jointly agreed to extend the Hudson Defendants' time to file an Answer.  (Dkt. No. 38.)  On August 10, the Hudson Defendants filed a letter outlining the reasons for their anticipated Motion To Dismiss the Complaint.  (Dkt. No. 43.)  On August 17, 2020, Plaintiff filed a response.  (Dkt. No. 47.)

Meanwhile, on July 9, 2020, Plaintiff filed a proposed Order to Show Cause as to why an order should not be issued pursuant Federal Rule of Civil Procedure 66 appointing a receiver to take control of the property located at 80 Main Street, Ossining, New York.  (Dkt. Nos. 32–35.)  The Hudson Defendants filed an Opposition on August 14, 2020, (Dkt. No. 46), and Plaintiff filed a Reply on August 19, 2020.  (Dkt. Nos. 49–51.)  On August 21, 2020, after hearing oral arguments on the Order to Show Cause, the Court granted Plaintiff's request to appoint Andrew L. Herz ("Herz") as Receiver.  (*See* Dkt. (minute entry for Aug. 21, 2020); *see also* Dkt. No. 59.)  On August 25, 2020, the Hudson Defendants filed a Notice of Interlocutory Appeal from the Order Appointing a Receiver.  (Dkt. No. 60.)[2]  On September 9, 2020, the Court signed an Order

---

[2] On December 14, 2020, the Second Circuit "so-ordered" Plaintiff and the Hudson Defendants' stipulation withdrawing the appeal.  (Dkt. No. 109.)

5

appointing counsel for the Receiver. (Dkt. No. 67.) Following the appointment of the Receiver, the Court has approved various interim disbursements to the Receiver and counsel for the Receiver. (*See, e.g.*, Dkt. Nos. 104–105, 110, 118.)

On September 4, 2020, Plaintiff filed an Amended Complaint. (Dkt. No. 66.) On September 11, 2020, the Court signed the Plaintiff and the Hudson Defendants' stipulation agreeing to a briefing schedule for the Hudson Defendants' anticipated Motion To Dismiss the Amended Complaint. (Dkt. No. 71.) On the same day, the Court adopted a Case Management Plan. (Dkt. No. 72.) On September 18, 2020, the Court referred this Action to Magistrate Judge Paul Davison for a settlement conference. (Dkt. No. 74.) On October 2, 2020, the Court signed Plaintiff and the Hudson Defendants' stipulation agreeing to delay the briefing schedule for the Hudson Defendants' anticipated Motion To Dismiss the Amended Complaint until after the settlement conference. (Dkt. No. 80.) The Court granted another extension on October 30, 2020. (Dkt. No. 101.)

Meanwhile, on October 5, 2020, the Court signed the Plaintiff, Gaccione, and Clark's consent letter agreeing to extend Gaccione and Clark's time to file an Answer or otherwise respond to the Amended Complaint. (Dkt. No. 82.) The Hudson Defendants filed their Answer to the Amended Complaint on November 30, 2020. (Dkt. No. 106.) Gaccione and Clark filed their Answer on the same day. (Dkt. No. 107.)

On June 7, 2021, the Court approved the Parties' request to extend the fact discovery deadline for 60 days to accommodate the Parties' settlement efforts. (Dkt. No. 134.) On July 26, 2021, the Court entered an Order extending limited additional fact discovery and adopting a briefing schedule for Plaintiff's anticipated Motion for Summary Judgment. (Dkt. No. 156.) The Court specified in this Order that Plaintiff's Motion for Summary Judgment shall be limited

to the issue of monetary events of default committed by Hudson, and shall exclude non-monetary events of default committed by Hudson. (*See id.* ¶ 4.)

On August 19, 2021 and August 26, 2021, the Clerk's Office issued Certificates of Default for Defendants VSP, Upper Restoration, Noble, Geberth, GAC, Bridge Mechanical, and Shawn's Lawns. (Dkt. Nos. 171–176, 180.)

On September 1, 2021, Plaintiff filed its Motion for Summary Judgment against the Hudson Defendants, Gaccione, and Clarke, a Motion for Default Judgment against VSP, Upper Restoration, Noble, Geberth, GAC, Bridge Mechanical, and Shawn's Lawns, and accompanying papers. (Dkt. Nos. 182–187.) On October 6, 2021, the Hudson Defendants, Gaccione, and Clark filed their Oppositions and accompanying papers. (Dkt. Nos. 191–196.) On October 27, 2021, Plaintiff filed its Reply. (Dkt. Nos. 206–207.)

On April 25, 2022, Plaintiff filed a letter notifying the Court that settlement discussions had failed. (Dkt. No. 236.) The Court noted in a memo endorsement that, given that no settlement is imminent, it would proceed with resolving the Motion for Summary Judgment. (Dkt. No. 237.)

## II.  Discussion

### A. Motion for Default Judgment

This Court's Individual Rules of Practice state that "a Party who wishes to obtain a default judgment must proceed by way of an Order To Show Cause." Individual Rules of Practice of the Honorable Kenneth M. Karas, IV.  Plaintiff did not move for a default judgment by way of an Order to Show Cause. (*See* Dkt.)  Thus, Plaintiff's Motion for Default Judgment is denied without prejudice for failure to follow this Court's Individual Rules of Practice.  Plaintiff

7

may re-file its Motion for Default Judgment so that it complies with this Court's Individual Rules of Practice.

    B.  Motion for Summary Judgment

        1. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility

that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4));

9

*see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)). Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side ... tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court"). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he

10

credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

### 2. Analysis

The Court will address the arguments set forth in Plaintiff's Memorandum as necessary to resolve the instant Motion for Summary Judgment.

#### a. Prima Facie Case

A plaintiff mortgagee in a foreclosure action establishes a prima facie case "by presenting a note, a mortgage, and proof of default . . . ." *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014) (citations omitted); *see also U.S. Bank Nat'l Ass'n v. Mc Dermott*, No. 20-CV-352, 2022 WL 2392522, at *5 (S.D.N.Y. July 1, 2022) (same); *Freedom Mortg. Corp. v. Heirs*, No. 19-CV-1273, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) (same). This creates a "presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Evancie*, 2014 WL 1515643, at *4 (citations omitted). "Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011) (citations omitted), *aff'd*, 504 F. App'x 30 (2d Cir. 2012).

Here, Plaintiff has produced the Note, Security Instrument, the Loan Agreement Assignment, and the Notice of Default. (*See* Decl. of Lukas P. Mehring ("Mehring Decl.") Exs. C–H (Dkt. Nos. 184-4–184-8).) Plaintiff has also offered an affidavit indicating that Defendants have been in default of their loan obligations since at least March 2020 for failure to make timely and complete payments. (*See, e.g.*, Mehring Decl. ¶¶ 35–36, 39). Defendants "[a]dmit that

11

Hudson last made payments to Plaintiff in or around March 2020." (Clarke & Gaccione's 56.1 ¶ 49.) "Plaintiff has therefore established a prima facie case and is presumptively entitled to foreclosure." *CIT Bank, N.A. v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8618, 2017 WL 2819867, at *3 (S.D.N.Y. June 28, 2017); *see also Avail 1 LLC v. Latief,* No. 17-CV-5841, 2020 WL 5633869, at *6–7 (E.D.N.Y. Aug. 14, 2020), *report and recommendation adopted*, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020) (finding that the plaintiff had established a prima facie case and was therefore entitled to foreclosure where the plaintiff provided the court with the mortgage, note, and an affidavit evidencing the defendant's default, and the defendant failed to make a contrary showing).

Accordingly, "the burden shifts" to Defendants to establish any affirmative defenses. *E. Sav., FSB v. Thompson*, No. 12-CV-1197, 2016 WL 2977268, at *2 (E.D.N.Y. May 19, 2016); *see also Freedom Mortg. Corp.*, 2020 WL 3639989, at *4 (same).

### b. Affirmative Defenses

#### i. Executive Order No. 202.28

Defendants first argue that this Action was filed in violation of New York State Executive Order No. 202.28. (*See* Hudson Defs.' Mem. in Opp'n to Summ. J. ("Hudson Defs.' Opp'n") 6–11 (Dkt. No. 192).) Executive Order No. 202.28, which then-New York Governor Andrew Cuomo (" Governor Cuomo") signed on May 7, 2020, states:

> There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

(*Id.* at 7 (quoting N.Y. Exec. Order. No. 202.28).) Defendants point out that Executive Order 202.28 was extended on July 6, 2020 by Executive Order 202.48, and again on August 6, 2020

12

by Executive Order 202.58.  (*See id.* (citing N.Y. Exec. Order No. 202.48; N.Y. Exec. Order No. 202.58).)  Plaintiff counters that the Executive Orders do not apply to Defendants, but that even if they did, Defendants have not demonstrated that they suffered financial hardship caused by the COVID-19 pandemic.  (*See* Pl.'s Reply Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Reply") 4 (Dkt. No. 205).)  The Court agrees with Plaintiff.

Executive Order 202.28 does not apply to Defendants for two reasons.  First, Hudson's first missed payment occurred on March 1, 2020, (*see* Decl. of Guido Subotovsky ("Subotovsky Decl.") ¶ 8 (Dkt. No. 191)), and it therefore occurred before the lockdown began in New York as a result of the COVID-19 pandemic.  Indeed, as of March 1, 2020, there was only one confirmed case of COVID-19 in New York state.  *See* Joseph Goldstein & Jesse McKinley, *Coronavirus in N.Y.: Manhattan Woman is First Confirmed Case in State*, N.Y. Times, (Mar. 1, 2020), https://www.nytimes.com/2020/03/01/nyregion/new-york-coronvirus-confirmed.html.  And Governor Cuomo did not declare a state of emergency in New York until March 7, 2020.  *See* Jesse McKinley and Edgar Sandoval, *Coronavirus in N.Y.: Cuomo Declares State of Emergency*, N.Y. Times (Mar. 7, 2020), https://www.nytimes.com/2020/03/07/nyregion/coronavirus-new-york-queens.html.

Second, Executive Order 202.28 precluded initiation of commercial mortgage foreclosure actions for non-payment only, but Plaintiff alleges both monetary and non-monetary default.  (*See generally* Am. Compl; Compl. (Dkt. No. 1).)  Hudson's argument to the contrary "rewrites the plain language of the Executive Order by expanding its specific coverage of 'foreclosure[s] of any . . . commercial mortgage[ ] for nonpayment of such mortgage' to any foreclosure where nonpayment is present."  *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20-CV-5309, 2021 WL 3005598, at *3 (S.D.N.Y. July 13, 2021) (quoting N.Y. Exec. Order 202.28)).

13

"However, the plain meaning of the Executive Order does not support that reading." *Id.* As the court in *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020) observed in the landlord-tenant context, "[a]lthough landlords remain barred from initiating new summary proceedings 'for nonpayment of rent' against a tenant 'eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship,' they may seek eviction of any tenant for any reason other than nonpayment of rent." *Id.* at 160.

Third, even if Executive Order 202.28 did apply to Defendants, Hudson has failed to make a showing of financial hardship caused by the COVID-19 pandemic. Hudson claims that "[t]here is a direct correlation between the non-payments by [Hudson] to Plaintiff and [Hudson's] financial hardship due to the COVID-19 pandemic." (Hudson's Defs.' Opp'n 8.) However, apart from this conclusory allegation, Defendants do not provide any supportive documentation. In other words, Defendants do "not provide any insight into [Hudson's] financial condition and how it may have been affected by COVID-19. Therefore, the Court [can] not determine whether [Hudson] has access to other funds despite the effects of COVID-19 to enable it to make the payments that are due under the Loan [Documents]." *Wilmington*, 2021 WL 3005598, at *3; *see also SRI Eleven 1407 Broadway Operator LLC v. Mega Wear Inc.*, 144 N.Y.S.3d 289, 311 (N.Y. Civ. Ct. 2021) (finding that the tenant "did not establish that it was suffering financial hardship due to the COVID-19 pandemic" where it "did not submit any financial documents such as balance sheets, profits and loss statements, or any documentation that [it] received government assistance such as, the Small Business Administration's Paycheck Protection Program").

Thus, this affirmative defense fails.

14

ii. Force Majeure

Defendants next argue that the COVID-19 pandemic was a force majeure event that excused performance under the Loan Documents. (*See* Hudson Defs.' Opp'n 11–13.) Although Defendants concede that the Loan Documents do not contain a force majeure clause, Defendants ask the Court to imply a force majeure clause in the Loan Documents. (*See id.* at 13.) Defendants cite to *Nelkin v. Wedding Barn at Lakota's Farm, LLC*, No. 012448/2020, 152 N.Y.S.3d 216, 217–218 (N.Y. Civ. Ct. June 29, 2020), in which the court found that a couple was entitled to summary judgment where their wedding venue refused to issue the couple a refund when the wedding was cancelled due to New York Executive Orders banning large gatherings. *See id.* However, *Nelkin* is distinguishable for two reasons. First, the plaintiffs in *Nelkin* were unable to hold their wedding due to Executive Orders which specifically banned large gatherings such as weddings. *Id.* By contrast, here, Defendants have not demonstrated that they could not continue conducting business remotely during the height of the pandemic. Second, and most notably, the contract in *Nelkin* already contained a force majeure clause, which the court simply found to be enforceable. *See id.* at 223. Here, the Court declines to imply a force majeure provision where there is none. *See Arista Dev., LLC v. Clearmind Holdings, LLC*, No. 21-00979, 2022 WL 2572996, at *2 (N.Y. App. Div. July 8, 2022) (finding that force majeure defense was not available to tenant who failed to pay rent due to COVID-19 pandemic under commercial lease that did not have a force majeure provision); *Fives 160th, LLC v. Zhao*, 164 N.Y.S.3d 427 (N.Y. App. Div. April 7, 2022) (noting that a lease did not "contain a force majeure clause, and this [c]ourt may not add or imply such a clause").

Defendants also cite to *1877 Webster Ave. Inc. v. Tremont Ctr., LLC*, 148 N.Y.S.3d 332 (N.Y. Sup. Ct. 2021) in support of their argument, but this case is similarly inapposite. The court

15

in *1877 Webster* simply noted that the "parties' failure to include a force majeure clause in their lease does not preclude [the] [p]laintiff from alleging extra-contractual doctrines such as frustration of purpose and impossibility of performance." *Id.* at 337. Thus, the Court finds that the force majeure defense does not apply here and addresses the impracticability and impossibility defenses separately below.

### iii. Impracticability/Impossibility

Finally, Defendants argue that the impracticability and impossibility defenses apply. (*See* Hudson Defs.' Opp'n 13–18.) Plaintiff argues that they do not. (Pl.'s Reply 9–13.)

As an initial matter, Defendants note that "[c]ourts, including those in New York, often use 'impossibility' and 'impracticability' interchangeably when analyzing whether a party's performance under a contract is to be excused due to intervening, unforeseeable events." (*See* Hudson Defs.' Opp'n 16 (citing *Reed Found., Inc. v. Franklin D. Roosevelt Four Freedoms Park, LLC*, 964 N.Y.S.2d 152, 156 (N.Y. App. Div. 2013) and Restatement (Second) of Contracts § 261 (1981))). The Court will do the same here.

Under New York law, "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *1877 Webster Ave.*, 148 N.Y.S.3d at 289 (citation omitted). "New York courts have construed the impossibility defense very narrowly." *Clarex Ltd. v. Natixis Sec. Americas LLC*, 988 F. Supp. 2d 381, 393 (S.D.N.Y. 2013).

"A number of courts have rejected the impossibility defense as an excuse for [parties] not performing contractual obligation . . . during the COVID-19 pandemic." *A/R Retail LLC v. Hugo*

16

*Boss Retail, Inc.*, 149 N.Y.S. 3d 808, 826 (N.Y. Sup. Ct. May 19, 2021); *see also Gap Inc. v. Ponte Gadea New York LLC*, 524 F. Supp. 3d 224, 237–38 (S.D.N.Y. 2021) ("The fact that its continued performance may be burdensome, even to the extent of insolvency or bankruptcy . . . does not render [the plaintiff's] performance objectively impossible under New York law." (citation and quotation marks omitted)); *CW A&P Mamaroneck LLC v. PFM WC-1, LLC*, 162 N.Y.S.3d 924 (N.Y. Sup. Ct. Mar. 16, 2022) ("In recent cases, the majority of decisions have rejected attempts to assert the doctrines of frustration of purpose or impossibility of performance based on government restrictions arising from the COVID-19 pandemic."); *111 Fulton St. Invs. LLC v. Fulton Quality Foods LLC*, No. 653579/2020, 2021 NYLJ LEXIS 113, *5 (N.Y. Sup. Ct. Feb. 24, 2021) ("[The defendant] only made a partial payment of rent on March 1, 2020. . . . [I]t [therefore] appears that [the plaintiff] had financial issues before the pandemic devasted the restaurant industry. . . . While the pandemic certainly reduced [the defendant's] ability to improve its business, it was not the cause of the initial failure to pay the full amount due."); *35 E. 75th St. Corp. v. Christian Louboutin L.L.C.*, No. 154883/2020, 2020 WL 7315470, at *3 (N.Y. Sup. Ct. Dec. 09, 2020) ("The subject matter of the contract—the physical location of the retail store—is still intact. And [the] defendant is permitted to sell its products. The issue is that it cannot sell enough to pay the rent. That does not implicate the impossibility doctrine."); *Maesa LLC v. TPR Holdings LLC*, No. 652685/2020, 2020 WL 5499231, at *1 (N.Y. Sup. Ct. Sept. 9, 2020) ("[D]efendant submits no evidence or explanation of how performance was impossible . . . rather than being difficult due to the pandemic."). Like the defendant in *111 Fulton St.*, Defendants appear to have had financial issues prior to the pandemic, evidenced by the fact that their first missed payment occurred on March 1, 2020, (*see, e.g.*, Subotovsky Decl ¶ 8), and they therefore cannot argue that the pandemic was the cause of its initial failure to pay the full amount

17

due under the Loan Documents.  Moreover, even if Defendants had established that they were unable to meet their obligations under the Loan Documents due to the COVID-19 pandemic, this Court joins the chorus of New York courts which have rejected the impossibility/impracticability defenses to excuse a party's performance under a contract due to the COVID-19 pandemic. Indeed, like in *Gap*, *Maesa*, and *35 E. 75th St.*, Defendants have not demonstrated that performance was impossible due to the COVID-19 pandemic because their business was rendered completely inoperable. (*See, e.g.*, Hudson Defs.' Opp'n 8.)

Notably, as Plaintiff points out, Defendants fail to cite a single case published since the start of the COVID-19 pandemic to support their argument that the impossibility or impartibility defenses should apply here. (*See id.* at 13–18.) The Court therefore finds that's Defendants have not met their burden to establish the impossibility or impracticability defenses.[3]

---

[3] Gaccione and Clarke also argue that the frustration of purpose doctrine offers a defense against the enforcement of the Loan Documents due to the collapse of the retaining wall at the Property in August of 2018. (*See* Clarke & Gaccione's Mem. of Law in Opp'n to Mot. for Summ. J. ("Clarke & Gaccione's Opp'n") 2–4 (Dkt. No. 196)). Specifically, they allege that the purpose of the loan was to finance the construction of a residential apartment building at the Property, and that the Parties expected Hudson to rely on rental income in order to make its payments under the Loan Documents. (*See id.* at 2.) According to Clarke and Gaccione,

> less than two weeks after the Village of Ossining [(the "Village")] issued a Certificate of Occupancy for the [b]uilding on August 3, 2018, the massive retaining wall located on the property adjoining 80 Main Street collapsed without warning[,] . . . [which] prompted the Village to revoke the [b]uilding's Certificate of Occupancy, which in turn forced Hudson to terminate all its tenants' leases. . . . To this day, 80 Main Street has never generated any income.

(*Id.* at 3.) However, as Plaintiff points out, Hudson continued to make consistent payments in 2018 through March 1, 2020, showing that performance under the Loan Documents was not rendered impossible by the collapse of the retaining wall. (*See* Pl.'s Reply 13; *see also* Decl. of ("Friedman Decl.") Ex. 24 ("G. Subotovsky Dep.") 49–56 (Dkt. No. 185-26) (explaining that, following the retaining wall collapse in August 2018 and through March 2020, Hudson was able to make its monthly payments to plaintiff through "capital funded by the members")). Defendants have also not explained why they could not repair the retaining wall.  Thus, Defendants have not met their burden to

\*   \*   \*

In sum, Defendants have failed to meet their burden with respect to the affirmative defenses they raised in their Opposition. Thus, Plaintiff is entitled to summary judgment on Count I.

### c. Relief

Plaintiff seeks $7,139,045.31 in damages, consisting of the principal balance of $5,400,000, $4244.05 in late payment fees, $29,362.50 in interest from February 1, 2020 through February 29, 2020, interest at the default rate in the amount of $997,438.76 from March 1, 2020 through July 31, 2021, an exit fee of $108,000, and receiver costs and receiver legal fees and costs of $600,000. (Pl.'s 56.1 ¶¶ 67–68.) This amount, however, does not include a calculation of attorney's fees and costs and documentation thereof. (*See id.*)

"Pursuant to [§] 1321 of [] [New York's Real Property Actions and Proceedings Law ("RAPL")], the trial court has the authority to compute the amount owed or appoint a referee to do the same." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at \*4 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to plaintiff in a foreclosure action); *see also CIT Bank, N.A. v. Langley*, No. 17-CV-1548, 2019 WL 6050258, at \*6 (E.D.N.Y. Nov. 15, 2019) ("[U]pon awarding summary judgment to a plaintiff in a foreclosure action, the RAPL allows for the appointment of a referee."); *CIT Bank, N.A. v. Metcalfe*, No. 15-CV-1829, 2017 WL 3841852, at

---

assert a defense of frustration of purpose based on the collapse of the retaining wall. *See, e.g.*, *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20-CV-4644, 2021 WL 705880, at \*7 (S.D.N.Y. Feb. 22, 2021) ("In order to be invoked, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, the transaction would have made little sense. . . . [I]t is [] not enough that the transaction has become less profitable for the affected party or even that [the affected party] will sustain a loss.") (citations and quotation marks omitted) (fourth alteration in original).

19

*1–2 (E.D.N.Y. Sept. 1, 2017) (appointing a Special Master to calculate "the outstanding principal, accrued late charges, related expenses and attorneys' fees" with respect to a mortgage foreclosure). Plaintiff is therefore directed to file a Proposed Judgment of foreclosure providing for a sale of the Property and requesting the appointment of a proposed referee to calculate the total amount owed to Plaintiff, effectuate the sale, and disperse funds from such a sale. *See CIT Bank, N.A. v. Escobar*, No. 16CV3722, 2017 WL 3614456, at *9 (E.D.N.Y. June 16, 2017), *report and recommendation adopted*, 2017 WL 3634604 (E.D.N.Y. Aug. 18, 2017).

### III. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment on Count I of the Amended Complaint is granted. Counts II and III remain in this Action. Plaintiff's Motion for Default Judgment is denied without prejudice. Plaintiff may file a renewed motion for default judgment in accordance with this Court's Individual Rules of Practice. The Clerk of Court is respectfully directed to enter judgment for Plaintiff on Count I of the Amended Complaint and terminate the pending Motion. (Dkt. No. 182).

SO ORDERED.

DATED:    September 1, 2022
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE